Filed 9/21/18

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re N.G., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E070338 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1100389) |
| v. | O P I N I O N |
| S.A., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Jean P. Leonard, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Reversed with directions.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, and James E. Brown, Guy B. Pittman, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

## I. INTRODUCTION

Defendant and appellant, S.A. (Mother), is the mother of N.G., a boy born in 2005. Mother appeals from the April 5, 2018, judgment terminating parental rights to N.G., then age 13. (Welf. & Inst. Code, § 366.26.)[1] Mother claims only that the juvenile court erroneously failed to ensure that plaintiff and respondent, Riverside County Department of Public Social Services (DPSS), fully investigated N.G.'s paternal lineal ancestry and gave adequate notices of the proceedings to all federally recognized Cherokee tribes and to the Bureau of Indian Affairs (BIA), pursuant to the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (Welf. & Inst. Code, § 224 et seq.).

We agree Mother's claim has merit and conditionally reverse the judgment. We also conclude that DPSS must be ordered to further investigate N.G.'s paternal lineal ancestry, and include any newly discovered information concerning N.G.'s paternal lineal ancestry in the ICWA notices to all federally recognized Cherokee tribes, the BIA, and all previously noticed tribes. DPSS must also inquire whether N.G. may have maternal lineal ancestry and, if so, send additional ICWA notices, as appropriate.

## II. BACKGROUND

On March 17, 2011, N.G. was taken into protective custody, and N.G.'s father, J.G., filed a Parental Notification of Indian Status form (ICWA-020) indicating he may have Blackfeet or Navajo Indian ancestry. On the form, J.G. placed a question mark next

---

[1] Undesignated statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

to the tribes' names and wrote "not exactly sure." Also on March 17, N.G.'s paternal grandfather, R.G., reported that R.G.'s grandfather (N.G.'s great-great-grandfather) was Native American, and R.G. believed his grandfather's tribe was "out of Michigan."

On March 29, 2011, DPSS sent ICWA notices (Notice of Child Custody Proceeding for Indian Child (ICWA-030)) to the Blackfeet Tribe of Montana, the Navajo Nation, the Colorado River Indian Tribes, and the Colorado River Tribal Council (the March 2011 ICWA notices). The March 2011 ICWA notices included J.G.'s and R.G.'s full names and dates of birth, J.G.'s current address and one former address, and stated R.G. lived in "Corona, California." The March 2011 ICWA notices included no other identifying information concerning N.G.'s paternal lineal ancestors. (§ 224.2, subd. (a)(5)C).)

In response to the March 2011 ICWA notices, the Blackfeet Tribe and the Navajo Nation said they were unable to verify that N.G. was an Indian child or eligible for membership in their tribes based on the information in the ICWA notices. The Colorado River Indian Tribes responded that N.G. was not an enrolled member of the tribes nor eligible for enrollment in the tribes.

On April 21, 2011, the court found "good" ICWA notice had been given and that ICWA did not apply to the Blackfeet Tribe. On October 25, 2011, the court found ICWA did not apply, and on April 3, 2012, the court found N.G. was not an Indian child. But on April 18, 2011, before the court made any of these findings, DPSS reported that, on April 11, 2011, J.G. told the social worker that, a year earlier, J.G. had been in contact with

3

"paternal cousins" who were registered members of "the Cherokee tribe," and J.G. and his father, R.G., "may have" Cherokee ancestry. J.G. said that neither he nor R.G. were registered members of any Indian tribe. J.G. was killed in a motorcycle accident in August 2012.

The record does not show that any ICWA notices were given to any federally recognized Cherokee tribes or the BIA. Nor does the record indicate that DPSS attempted to interview J.G., R.G, the paternal cousins, or any other persons in order to obtain, if known, the full names, dates and places of birth and death, current and former addresses, and other identifying information concerning N.G.'s paternal lineal ancestors. (§ 224.2, subd. (a)(5)(C); *In re Karla C.* (2003) 113 Cal.App.4th 166, 175.)

Mother's whereabouts were unknown when N.G. was taken into protective custody in March 2011 and neither Mother nor J.G. received reunification services. But DPSS and Mother were in contact in June 2011 and in February 2012, and the record does not show that Mother ever completed or that DPSS ever asked Mother to complete a Parental Notification of Indian Status form (ICWA-020), or whether DPSS ever asked Mother, any other maternal relatives, or any other persons whether N.G. may have any maternal Indian ancestry. DPSS was in contact with a maternal uncle, E.J., in August 2011, but the record does not show that DPSS asked E.J. whether N.G. may have maternal Indian ancestry, or if so whether DPSS asked E.J. for identifying information concerning N.G.'s maternal lineal ancestors.

4

N.G. was placed in foster care in March 2011. In September 2017, N.G. was placed in a prospective adoptive home with his godmother. On April 5, 2018, the court terminated parental rights and placed N.G. for adoption. Mother appeals from the judgment terminating parental rights.

### III. DISCUSSION

Mother claims only that the juvenile court erroneously failed to ensure that DPSS fully investigated N.G.'s paternal lineal ancestry and sent ICWA notices to all federally recognized Cherokee tribes and the BIA, after N.G. informed DPSS in April 2011 that N.G. may have Cherokee ancestry. We agree. On remand, the court must ensure that DPSS fully investigates N.G.'s paternal lineal ancestry and includes any newly discovered information in the ICWA notices to all federally recognized Cherokee tribes, the BIA, and the previously noticed tribes. DPSS must also inquire whether N.G. may have maternal Indian ancestry and, if so, send additional ICWA notices, as appropriate.

A. *ICWA and Related California Statutes, Overview*

1. ICWA's Notice Requirements

ICWA provides: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child [here, DPSS] shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a).) ICWA also requires child welfare agencies to notify the BIA of

the proceedings, if the juvenile court knows or has reason to know the child may be an Indian child but the identity of the child's tribe cannot be determined. (25 U.S.C. §§ 1903(11), 1912(a); *In re Michael V.* (2016) 3 Cal.App.5th 225, 232 (*Michael V.*).)[2]

An "Indian child" is a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4).) An ICWA notice "enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding. No foster care placement or termination of parental rights proceeding may be held until at least 10 days after the tribe receives the required notice." (*Isaiah W.*, *supra*, 1 Cal.5th at p. 5; 25 U.S.C. § 1912(a); see Welf. & Inst. Code, § 224.2, subd. (d).) The juvenile court is not authorized to determine ICWA does not apply until (1) "proper and adequate" ICWA notice has been given, and (2) neither a tribe nor the BIA has provided a determinative response to the notice within 60 days of receiving the notice. (Welf. & Inst. Code, § 224.3, subd. (e)(3); *Isaiah W.*, *supra*, at p. 11.)

An ICWA notice must include, among other things, (1) the Indian child's name, birthdate, and birthplace, if known; (2) the name of the Indian tribe in which the child is a member or may be eligible for membership, if known; and (3) specific identifying

---

[2] Section 224.2 "codifies and elaborates on" ICWA's notice requirements. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 9 (*Isaiah W.*).) It provides: "If the identity or location of the parents, Indian custodians, or the minor's tribe is known, a copy of the notice shall also be sent directly to the Secretary of the Interior, unless the Secretary of the Interior has waived notice in writing . . . ." (§ 224.2, subd. (a)(4); *Michael V.*, *supra*, 3 Cal.App.5th at p. 232.)

information concerning the child's lineal ancestors, including "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents . . . including maiden, married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known." (§ 224.2, subd. (a)(5)(A)-C).)

An ICWA notice is also required to include known identifying information concerning the child's great-great-grandparents and even older lineal ancestors. (25 C.F.R. § 23.111(d) (2018).) There is "no general blood quantum requirement or 'remoteness' exception to ICWA notice requirements," particularly when there is no indication that the child's tribe or potential tribe has a blood quantum requirement for membership. (*In re Breanna S.* (2017) 8 Cal.App.5th 636, 650; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1386-1387.) Thus, it is "'necessary to provide as much information as is known on the Indian child's *direct lineal ancestors*.' (25 C.F.R., § 23.11(b), (2003).)" (*In re Karla C.*, *supra*, 113 Cal.App.4th at p. 175, italics added.)

2. <u>The Duty of Inquiry</u>

Juvenile courts and child protective agencies have "an affirmative and continuing duty to inquire" whether a child for whom a section 300 petition has been filed is or may be an Indian child. (§ 224.3, subd. (a); *In re M.R.* (2017) 7 Cal.App.5th 886, 904.) If the court or social worker "knows or has reason to know" the child is or may be an Indian child, the social worker "is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian

7

custodian, and extended family members" and "any other person that reasonably can be expected to have information regarding the child's membership status or eligibility" in order to "gather the information required" in section 224.2, subdivision (a)(5). (§ 224.3, subd. (c); *Michael V.*, *supra*, 3 Cal.App.5th at p. 233; *In re K.R.* (2018) 20 Cal.App.5th 701, 706-707 (*K.R.*); Cal. Rules of Court, rule 5.481(a)(4)(A).)

B. *The Court and DPSS Failed to Comply with ICWA and Related California Law*

As Mother claims, DPSS had a duty to send ICWA notices of the proceedings for N.G. to all federally recognized Cherokee tribes and the BIA, after J.G. reported in April 2011 that N.G. may have Cherokee ancestry through "the Cherokee tribe." (§ 224.2, subd. (a)(3), (4); *In re Merrick V.* (2004) 122 Cal.App.4th 235, 246.) The record does not show DPSS sent these ICWA notices. Thus, the judgment must be conditionally reversed and the matter remanded to the juvenile court with directions to order DPSS to send these ICWA notices. (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 711.)

The record also indicates DPSS failed to fully investigate N.G.'s *paternal* lineal ancestry, after J.G. initially reported N.G. may have Blackfeet or Navajo ancestry or after J.G. later reported N.G. may have Cherokee ancestry. (*Michael V.*, *supra*, 3 Cal.App.5th at pp. 232-233.) Specifically, the record does not show that DPSS ever asked J.G. (now deceased), or the paternal grandfather, R.G., for any identifying information concerning N.G.'s paternal lineal ancestors. (§ 224.2, subd. (a)(5)(C); *In re Karla C.*, *supra*, 113 Cal.App.4th at p. 175.)

8

Indeed, the March 2011 ICWA notices do not even include R.G.'s full current address; they state R.G.'s current address as "Corona, California," even though R.G. was in contact with DPSS in 2011 and presumably could have given DPSS his full, current address, along with identifying information concerning R.G.'s grandfather (N.G.'s great-great-grandfather) whom R.G. reported was "Native American." Nor does the record show DPSS ever attempted to contact J.G.'s "paternal cousins," whom J.G. reported were registered members of "the Cherokee tribe," for any identifying information concerning N.G.'s paternal lineal ancestors. DPSS had a duty to make *all of these inquires* and to interview all persons who reasonably could have been expected to have information concerning N.G.'s paternal lineal ancestors. (§ 224.3; *K.R.*, *supra*, 20 Cal.App.5th at pp. 707-708.)

DPSS argues it had no duty to give ICWA notice to the Cherokee tribes because J.G. did not provide enough information to suggest that any of N.G.'s paternal lineal ancestors were members of a Cherokee tribe. (§§ 224.2, subd. (a), 224.3, subds. (b)(1), (c).) We disagree. J.G. told the social worker he had been in contact with "paternal cousins" who were registered with "the Cherokee tribe." This plainly suggested N.G. may be eligible for membership in a federally recognized Cherokee tribe, and required the social worker to "make further inquiry" (§ 224.3, subd. (c)) to determine whether the paternal cousins and N.G. shared lineal ancestors and whether N.G. might be eligible for membership in a Cherokee tribe through those ancestors (*In re A.G.* (2012) 204 Cal.App.4th 1390, 1396).

9

Lastly, the record does not show that DPSS ever asked Mother whether N.G. may have *maternal* Indian ancestry or ever asked Mother to complete a Parental Notification of Indian Status form (ICWA-020), even though DPSS was in contact with Mother in June 2011 and February 2012. DPSS was also in contact with a maternal uncle, E.J., in August 2011, but the record does not show that DPSS ever asked E.J. whether N.G. may have maternal Indian ancestry. The juvenile court also had a duty to make these inquires. (*In re W.B.* (2012) 55 Cal.4th 30, 52-53.)

Thus, on remand, the juvenile court must ensure that DPSS (1) fully investigates N.G.'s paternal lineal ancestry; (2) gives *new* ICWA notices, including all previously known and newly discovered identifying information concerning N.G.'s paternal lineal ancestry, to the previously noticed tribes, all federally recognized Cherokee tribes, and the BIA; and (3) takes reasonable steps to ascertain whether N.G. may also have maternal Indian ancestry, and if he does, that DPSS fully investigates N.G.'s maternal lineal ancestry and gives additional ICWA notices, as appropriate.

C. *Substantial Evidence Does Not Show DPSS Complied with ICWA, and the ICWA Compliance Deficiencies Are Prejudicial*

DPSS claims substantial evidence supports the court's findings that adequate ICWA notices were given and that ICWA did not apply. But DPSS does not explain what evidence shows that DPSS discharged its duty to investigate N.G.'s paternal lineal ancestry or that DPSS ever attempted to ascertain whether N.G. may also have maternal Indian ancestry. (*In re Charlotte V.* (2016) 6 Cal.App.5th 51, 57-58 [substantial evidence

showed agency gave proper and adequate ICWA notice, and parent failed to demonstrate prejudicial, reversible error].)

DPSS also claims Mother has not demonstrated prejudicial reversible error based on DPSS's failure to comply with the inquiry and notice requirements of ICWA and California law. DPSS relies on *Adoption of A.B.* (2016) 2 Cal.App.5th 912, 926 [appellant seeking reversal for lack of proper ICWA notice must show reasonable probability of a different result absent the error] and *In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576-577 ["Deficiencies in an ICWA notice are generally prejudicial, but may be deemed harmless under some circumstances."].

The problem in this case is that DPSS's reports do not indicate and the record does not otherwise show what, if any, efforts DPSS undertook to investigate N.G.'s possible status as an Indian child. This is the case even though the record shows that the court had a duty to ensure that DPSS made further inquiries concerning N.G.'s paternal lineal ancestry for purposes of notifying the previously noticed tribes, the federally recognized Cherokee tribes, and the BIA. The court also had a duty to ensure that DPSS attempted to ascertain whether N.G. may also have maternal Indian ancestry, but the record does not show that the court or DPSS discharged this duty. In short, the record does not show that the court or DPSS fully complied with ICWA and related California law.

This court recently addressed the problem of an inadequate record demonstrating ICWA compliance in *K.R.*, *supra*, 20 Cal.App.5th 701. There, we acknowledged that no statute or rule of court requires a social services agency to make a record of the efforts it

11

undertook to comply with ICWA. And we acknowledged that, as a general rule, it is the appellant's burden to produce an adequate record that demonstrates prejudicial, reversible error on appeal. (*Id*. at pp. 708-709.) But we also said, "ICWA compliance presents a unique situation" in that a parent may raise ICWA compliance issues on appeal even though the parent has no burden to object to ICWA compliance deficiencies in the juvenile court. (*Id*. at p. 708; *Isaiah W.*, *supra*, 1 Cal.5th at pp. 8-9, 15.)

We also noted that, in an appeal raising ICWA compliance issues, the parent "is in effect acting as a surrogate for the tribe." (*K.R.*, *supra*, 20 Cal.App.5th at p. 708.) The purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings. (*Ibid*.) Thus, we reasoned, appellate review of ICWA compliance issues "should not be derailed simply because the parent is unable to produce [or has not produced] an adequate record." (*Ibid*.)

Accordingly, we held: "The agency cannot omit from its reports any discussion of its efforts to locate and interview family members who might have pertinent information and then claim that the sufficiency of its efforts cannot be challenged on appeal because the record is silent. [¶] Nor can the juvenile court assume that because *some* information was obtained and relayed to the relevant tribes, the social services agency necessarily complied fully with its obligations. On the contrary, once there is sufficient information to believe that the children might be Indian children within the meaning of ICWA and the California statutes, 'responsibility for compliance' with those statues 'falls squarely and

12

affirmatively' on *both* the social services agency and the court.  [Citation.]  Accordingly, the court has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so." (*K.R.*, *supra*, 20 Cal.App.5th at p. 709.)

We recognize that our holding in *K.R.* is at odds with established case law which has applied the substantial evidence rule to claims of ICWA error, and which has treated the appellant (usually a parent) as having the burden of demonstrating prejudicial ICWA error on appeal based on an adequate record.  (E.g., *In re Charlotte V.*, *supra*, 6 Cal.App.5th at pp. 57-58.)  But in a case such as this one, where the record does not show what, if any, efforts the agency made to discharge its duty of inquiry (§ 224.3, subd. (a); *Michael V.*, *supra*, 3 Cal.App.5th at p. 233), and the record also does not show that all required ICWA notices were given or that the ICWA notices that were given included all known identifying information, the burden of making an adequate record demonstrating the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements must fall squarely and affirmatively on the court and the agency.  And in the absence of an appellate record affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply.  Instead, as a general rule, we will find the appellant's claims of ICWA error prejudicial and reversible.

13

Indeed, on a deficient record such as this one, we simply cannot know whether DPSS would have discovered information sufficient to enable any of the previously noticed tribes to determine whether N.G. is an Indian child, or whether any of the unnoticed federally recognized Cherokee tribes or the BIA would have found N.G. is an Indian child. Nor can we know whether N.G. may be an Indian child through his maternal ancestors, given that DPSS's reports do not indicate that DPSS asked Mother or other maternal relatives whether N.G. may have maternal Indian ancestry. Thus, on this record, we conclude Mother's claims of ICWA error are prejudicial and reversible.

D. *Mother May Challenge the Juvenile Court's ICWA Findings on This Appeal*

DPSS argues Mother's appeal is untimely because she did not seek appellate review of the juvenile court's April 21, 2011, finding that "good" ICWA notice was given, or the court's October 25, 2011, finding that ICWA did not apply. We disagree. It is settled that a parent's failure to appeal from an earlier order does not preclude the parent from raising ICWA compliance issues in an appeal from a later order, including an order terminating parental rights. (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 6, 9, 14-15; *K.R.*, *supra*, 20 Cal.App.5th at p. 706.)

*Isaiah W.* held that a parent who does not timely appeal a juvenile court order that subsumes a finding that ICWA does not apply may nonetheless challenge the finding in an appeal from a subsequent order terminating parental rights. (*Isaiah W.*, *supra*, 1 Cal.5th at pp. 6, 9, 14-15.) The court reasoned that *because* ICWA imposes on the juvenile court a continuing and affirmative duty to inquire whether the child is an Indian

14

child, an order terminating parental rights "necessarily subsume[s] a present determination of ICWA's inapplicability," which the parent may challenge on appeal from the order terminating parental rights. (*Ibid.*)

DPSS attempts to distinguish *Isaiah W.* on the ground the juvenile court in that case was *not relieved* of its continuing duties of inquiry and notice at the time it made the order terminating parental rights. Here, DPSS argues, the juvenile court *was relieved* of these duties after it found DPSS gave "good" ICWA notice and none of the noticed tribes responded that N.G. was an Indian child. DPSS is mistaken. *Isaiah W.* observed that, "*After proper notice has been given*, if the tribes respond that the minor is not a member or not eligible for membership, or if neither the BIA nor any tribe provides a determinative response [to the notice] within 60 days, then the court may find that ICWA does not apply to the proceedings. At that point, the court is relieved of its duties of inquiry and notice unless the BIA or a tribe subsequently confirms that the child is an Indian child." (*Isaiah W.*, *supra*, 1 Cal.5th at p. 15, italics added.)

As discussed, the record does not support the court's finding that proper and adequate ICWA notice was given to the previously noticed tribes, because the record does not show what if any efforts DPSS undertook to investigate N.G.'s paternal lineal ancestry. For these reasons, proper and adequate ICWA notices were not given to the previously noticed tribes, and DPSS was never relieved of its continuing duties of inquiry and notice under ICWA and California law. (*Isaiah W.*, *supra*, 1 Cal.5th at p. 15.)

## IV. DISPOSITION

The judgment terminating parental rights to N.G. is conditionally reversed. The matter is remanded to the juvenile court with directions to comply with the inquiry and notice provisions of ICWA and of sections 224.2 and 224.3. On remand, the court must ensure that DPSS fully investigates N.G.'s paternal lineal ancestry; gives *new* ICWA notices, including all previously known and newly discovered identifying information concerning N.G.'s paternal lineal ancestry to the previously noticed tribes, all federally recognized Cherokee tribes, and the BIA; and takes reasonable steps to ascertain whether N.G. may also have maternal Indian ancestry, and if he does, that DPSS fully investigates N.G.'s maternal lineal ancestry and gives additional ICWA notices, as appropriate.

If, after receiving ICWA notice as required by sections 224.2 and 224.3, the tribes or the BIA do not respond to the ICWA notices, or respond that N.G. is not an Indian child, the judgment terminating parental rights to N.G. shall immediately be reinstated and further proceedings shall be conducted, as appropriate. If any tribe or the BIA determines N.G. is an Indian child, the court shall proceed accordingly.

CERTIFIED FOR PUBLICATION

FIELDS
_____
J.

We concur:

RAMIREZ
_____
P. J.

SLOUGH
_____
J.

16