Filed 10/19/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Y.W. et al., Persons Coming Under the Juvenile Court Law. | B310566 |
| | (Los Angeles County Super. Ct. No. 19CCJP04000A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,  Plaintiff and Respondent,  v.  DESHAWN W. et al.,  Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge. Conditionally affirmed with directions.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant Deshawn W.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant Clairessa M.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel and Aileen Wong, Senior Deputy County Counsel for Plaintiff and Respondent.

_____

## INTRODUCTION

Deshawn W. and Clairessa M. appeal from the juvenile court's orders terminating their parental rights under Welfare and Institutions Code section 366.26.[1]  They argue the juvenile court and the Los Angeles County Department of Children and Family Services failed to comply with the inquiry and notice requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA).

Disagreeing with the court's narrow view of the duty of inquiry under ICWA in *In re Austin J.* (2020) 47 Cal.App.5th 870 and the court's broad view of harmless error in *In re A.C.* (2021) 65 Cal.App.5th 1060, we conclude that Deshawn's and Clairessa's contentions have merit and that the juvenile court erred in ruling ICWA did not apply.  Therefore, we conditionally affirm the juvenile court's orders terminating Deshawn's and Clairessa's parental rights, with directions to ensure the Department complies with the inquiry and notice provisions of ICWA and related California law.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Dependency Proceedings*

On June 24, 2019 the Department filed a petition under section 300, subdivisions (b)(1) and (j), alleging Deshawn's and Clairessa's history of substance abuse and current use of marijuana placed their one-year-old son, Y.W., and one-month-old daughter, Y.G.,[2] at risk of serious physical harm.  The Department learned about the family when Clairessa and Y.G. both tested positive for marijuana when Y.G. was born.  The Department subsequently learned that Deshawn and Clairessa smoked marijuana regularly and that Y.W. had also tested positive for marijuana when he was born in 2018.  The juvenile court detained the children from Deshawn and Clairessa, and placed them in foster care.

At the August 8, 2019 jurisdiction and disposition hearing the juvenile court sustained the petition and declared Y.W. and Y.G. dependents of the court under section 300, subdivisions (b)(1) and (j).[3]  The court found that there was a substantial danger and risk of detriment to the health, safety, protection, or physical or emotional well-being of the children if they were to remain in the home of their parents, that the Department made reasonable efforts to prevent removal, and that there were no services available to prevent further

---

[2]    We will refer to the younger child by the first and fourth letter of her first name because the initials of her first and last name, and the first three letters of her first name, are the same as Y.W.'s.

[3]    For Clairessa, the court sustained counts under section 300, subdivisions (b)(1) and (j); for Deshawn, the court sustained counts under section 300, subdivision (b)(1).

detention.  The court removed the children from the custody of Deshawn and Clairessa and ordered suitable placement for them. The court also ordered Deshawn and Clairessa to complete substance abuse and domestic violence programs and to have monitored visitation with the children.

At the February 26, 2020 six-month review hearing the juvenile court found Deshawn and Clairessa had "minimally complied" with their case plans.  The court terminated reunification services and set the case for a selection and implementation hearing under section 366.26.  On January 12, 2021 the juvenile court held the hearing under section 366.26 to select a permanent plan for the children.[4]  The court found that returning the children to Deshawn and Clairessa would be detrimental, that Deshawn and Clairessa had not maintained regular and consistent visitation and contact, and that the children were adoptable.  The court terminated Deshawn's and Clairessa's parental rights and ordered the Department to continue to provide the children with permanency placement services.

B.    *ICWA Inquiry and Notice*

Deshawn and Clairessa each completed Judicial Council form ICWA-020, Parental Notification of Indian Status. Clairessa checked the box next to the statement "I have no Indian ancestry as far as I know."  Deshawn checked the box next to the statement "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe."  In the space for Deshawn to state "Name of tribe(s)," Deshawn wrote

---

[4]    Because of the COVID-19 pandemic, the juvenile court continued the hearing under section 366.26 from June 23, 2020 to January 12, 2021.

4

"Cherokee → from Texas." Clairessa told a social worker she was "of Puerto Rican descent."

At the detention hearing the court confirmed Clairessa said she did not have Indian ancestry, and Deshawn confirmed he believed his grandmother was a member of the Cherokee Tribe. Based on Deshawn's responses, the court found that it had reason to know the children may be Indian children as defined by ICWA and that the notice requirements under section 224.3, subdivision (b), "have been triggered." The court told Deshawn to provide as much information as possible about his grandmother and ordered the social worker to provide notice to the Bureau of Indian Affairs.

Deshawn told the social worker his maternal grandmother was "95% Cherokee" and provided, among other information, his mother's name, date of birth, date of death, and place of death, and his grandmother's name, "possible" place of birth, month and year of death, and place of death. Clairessa told the social worker she was adopted when she was two years old, did not have any information about her biological relatives, and was "estranged" from her adoptive parents, who lived in North Carolina. Clairessa declined to provide the contact information for her adoptive parents.

On July 12, 2019 the Department mailed Judicial Council form ICWA-030 to the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee Indians, and the Bureau of Indian Affairs. In the spaces on the form for the Department to fill in the name of "Mother's Biological Mother" and "Mother's Biological Father," the Department wrote "UNKNOWN." In the section on the form for the Department to provide information on "Father's Biological Grandmother," the Department listed the name of Deshawn's grandmother, the Indian tribes she may have been affiliated

5

with, and the date and place of her death.  In the space provided for the Department to list her date and place of birth, the Department wrote "UNKNOWN."

After the Department mailed the ICWA-030 notices, the social worker conducted an online search and found the names of and contact information for Clairessa's adoptive parents, Leonard and Maxcine M.  The social worker interviewed Maxcine, who stated she and Leonard adopted Clairessa when Clairessa was two years old.  Maxcine said the child protective agency in North Carolina removed Clairessa from her biological mother because she neglected Clairessa and abused drugs.  Maxcine stated she maintains phone contact with Clairessa, who typically called asking for money.

At a hearing on July 24, 2019 the juvenile court observed that the July 12, 2019 ICWA notices "might be incomplete" because Clairessa's adoptive parents should know the name of Clairessa's biological mother.  The court ordered the Department to interview Clairessa's adoptive parents again to obtain the name of Clairessa's biological mother and biological father.

In a last minute information report filed for the jurisdiction and disposition hearing, the Department stated that on August 7, 2019 the social worker interviewed Maxcine about any Indian ancestry that Clairessa might have.  Maxcine said she did not know of any Indian ancestry in her family or in her husband's.  Maxcine stated, however, that, although she did not know whether Clairessa's biological family had any Indian ancestry, she knew the name of Clairessa's biological father (but had "no additional information about him or his relatives") and was "able to obtain contact information" for Clairessa's maternal aunt.

6

There is no record the Department followed up with Maxcine to obtain the contact information for Clairessa's biological parents.[5]

At the August 8, 2019 jurisdiction and disposition hearing the juvenile court observed that the last minute information report did not contain contact information for Clairessa's biological family. Counsel for the Department stated the report indicated the adoptive parents "knew how to contact an aunt, and they noted they would try to do that for the Department, but they didn't have any current contact information for them." The court asked counsel for Clairessa whether Clairessa had been able to obtain any further information about her biological relatives, and counsel replied, "No."

At an October 23, 2019 progress hearing the court summarized the status of the Department's efforts to locate Clairessa's biological parents: "We previously had had notices sent July 12, 2019, but the ICWA notices that were sent on that date indicated that the maternal grandparents were unknown. The adoptive parents were the godparents, so I said they probably needed to re-interview them for the ICWA notices. But the godparents didn't have any contact information, so the ICWA notices have been sent on July 12." The court also stated the Department received a response from the Eastern Band of Cherokee Indians,[6] made efforts to follow up with the Cherokee

---

[5] A social worker did speak with Maxcine five months later, on January 13, 2020, about the possibility of adopting Y.W. and Y.G.

[6] On July 22, 2019 the Eastern Band of Cherokee Indians sent a letter to the Department stating that, based on the information the Department provided, Y.W. and Y.G. were "neither registered nor eligible to register as a member of this tribe."

Nation of Oklahoma and the United Keetoowah Band of Cherokee Indians, but had not received a response from either of the latter two tribes. The court found that "ICWA notice is proper and complete," but stated that, "for any [section 366.26] hearing, we will need responses from the Cherokee Nation of Oklahoma and United Keetoowah [Band of Cherokee Indians] for new notices."

On November 13, 2020, in preparation for the hearing under section 366.26, the court observed that the Department had not received a response from the Cherokee Nation of Oklahoma or the United Keetoowah Band of Cherokee Indians and ordered the Department to send out new ICWA notices to those two tribes. On November 16, 2020 the Department sent out new form ICWA-030 notices to the Eastern Band of Cherokee Indians, the Cherokee Nation of Oklahoma, the United Keetoowah Band of Cherokee Indians, and the Bureau of Indian Affairs. As with the first ICWA-030 notices, in the space provided for the Department to state the birthdate and birthplace of Deshawn's grandmother, the Department wrote "UNKNOWN," and in the space provided for the Department to state Deshawn's grandmother's date and place of death, the Department again wrote "UNKNOWN." On January 7, 2021 the Department received an email from the Cherokee Nation that stated neither Y.M. nor Y.G. was an "Indian child" as defined by ICWA. The Department did not receive a response from the United Keetoowah Band of Cherokee Indians.

At the January 12, 2021 hearing under section 366.26 the juvenile court found that ICWA notice was "proper and complete," that the court did not have a reason to know or believe Y.W. or Y.G. was an Indian child, and that ICWA did not apply. As discussed, the court terminated Deshawn's and Clairessa's

8

parental rights.  Deshawn and Clairessa timely appealed from those orders.[7]

## DISCUSSION

### A. *The Juvenile Court Failed To Ensure the Department Complied with ICWA and Related California Law*

Deshawn and Clairessa contend the Department failed to conduct an adequate inquiry into Clairessa's possible Indian ancestry and omitted essential information on the notice to the Indian tribes Deshawn identified.  Because the Department failed to fulfill its duty under ICWA and related California law, and the juvenile court failed to fulfill its duty to ensure the Department did so, we must conditionally affirm the juvenile court's orders and direct the Department and the court to comply with these laws.

#### 1. *Applicable Law*

ICWA provides:  "'In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.'

---

[7]    Clairessa filed her notice of appeal on April 22, 2021, more than 60 days after the juvenile court's order terminating her parental rights.  On May 6, 2021 we granted Clairessa's motion for relief from trial counsel's failure to file a timely notice of appeal and deemed her notice of appeal timely.  On May 27, 2021 we consolidated Clairessa's appeal with Deshawn's appeal.

[Citation.] This notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 5; see 25 U.S.C. § 1912(a); § 224.3, subd. (a); *In re T.G.* (2020) 58 Cal.App.5th 275, 287-288; *In re K.R.* (2018) 20 Cal.App.5th 701, 706.)[8] "ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family." (*In re T.G.*, at p. 287; see 25 U.S.C. § 1902.)

"'ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child. [Citation.] Federal regulations implementing ICWA, however, require that state courts "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." [Citation.] The court must also "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."'" (*In re J.S.* (2021) 62 Cal.App.5th 678, 685; see 25 C.F.R. § 23.107(a).) In addition, ICWA allows states to provide "'"a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights

---

[8] "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see § 224.1, subds. (a) & (b); *In re D.F.* (2020) 55 Cal.App.5th 558, 565.)

10

provided under" ICWA,'" and the California Legislature has imposed on the court and child protective agencies ""'an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child."'" (*In re J.S.*, at p. 686; see § 224.2, subd. (a); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.)

Section 224.2, subdivision (b), requires the child protective agency to ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (See *In re J.S.*, *supra*, 62 Cal.App.5th at p. 686; *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290; Cal. Rules of Court, rule 5.481(a)(1).) If the court or child protective agency "has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child," the court and the Department "shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable."[9] (§ 224.2, subd. (e); see *In re J.S.*, at p. 686; *In re T.G.*, at p. 290;

---

[9]     "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe. Information suggesting membership or eligibility for membership includes, but is not limited to, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e)(1); see *In re J.S.*, *supra*, 62 Cal.App.5th at p. 686, fn. 7; *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290, fn. 14.)

Cal. Rules of Court, rule 5.481(a)(4).) If the further inquiry "results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1052; see 25 U.S.C. § 1912(a); § 224.3 [notice under ICWA "shall be provided" if the court, social worker, or probation officer "has reason to know . . . that an Indian child is involved"].) The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566; see *In re Charles W.* (2021) 66 Cal.App.5th 483, 489.)

"'The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings.'" (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.) "If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2); see *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050; Cal. Rules of Court, rule 5.481(b)(3)(A).)

2. *The Department Failed To Conduct an Adequate Inquiry into Clairessa's Possible Indian Ancestry*

The Department failed to satisfy its duty to inquire, under section 224.2, subdivision (b), whether Y.W. and Y.G. are or may be Indian children because it did not make meaningful efforts to locate and interview Clairessa's biological parents, who were "extended family members," as defined by ICWA and related

12

California law.[10]  (See *In re A.C., supra*, 65 Cal.App.5th at p. 1069 [child protective agency "erred by failing to ask the father and his extended family members whether [the father] had any Indian ancestry" (fn. omitted)]; *In re S.R.* (2021) 64 Cal.App.5th 303, 314 ["[t]he statute obligates the court and child protective agencies to ask all relevant involved individuals . . . 'whether the child is, or may be, an Indian child'"]; *In re T.G., supra*, 58 Cal.App.5th at p. 290 [the "duty to inquire begins with initial contact [citation] and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child"].)  It is true the Department initially did not (yet) know how to contact Clairessa's biological parents.  But once the social worker learned of a potentially viable lead to locate them, she made no effort to pursue it.  Maxcine told the social worker she knew the name of Clairessa's biological father and could obtain the contact information for Clairessa's maternal aunt (someone who might have been able to provide information about Clairessa's biological mother), but the Department did not follow up with Maxcine to gather this information, even though a social worker spoke with and emailed Maxcine a few months later on another topic (adopting the children).  (See *In re N.G.* (2018) 27 Cal.App.5th 474, 482 [child protective agency did not satisfy its duty of inquiry when it failed to ask the maternal uncle whether the child may have had Indian ancestry]; see also *In re*

---

[10]     See 25 United States Code section 1903(2) ("'extended family member'" includes the child's "grandparent"); section 224.1, subdivision (c); *In re D.S., supra*, 46 Cal.App.5th at page 1053; *In re Michael A.* (2012) 209 Cal.App.4th 661, 665 ("A 'grandparent' is defined by the ICWA as an '"extended family member."'").

13

*K.R.*, *supra*, 20 Cal.App.5th at p. 709 ["a social services agency has the obligation to make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status"].)

Citing *In re Austin J.*, *supra*, 47 Cal.App.5th 870, the Department contends that, because Clairessa and Maxcine denied any Indian ancestry, "there was no reason to believe the children were Indian children through mother's parentage to trigger a duty to make 'further inquiry' as to her side of the family, including any available biological relatives." The Department's continuing duty of inquiry is not so narrow. In *In re Austin J.* a father stated in court and on his form ICWA-020 that neither he nor his children had Indian ancestry and that none of them was eligible for membership in an Indian tribe. (*Id.* at p. 888.) The court held that, based on the father's responses to the ICWA inquiry, "there was no 'reason to believe' that any of his children are Indian children based on his parentage" and that, "[t]herefore, there was no duty to make a 'further inquiry' as to his side of the family." (*Ibid.*)

The court's holding in *In re Austin J.*, however, is inconsistent with section 224.2, subdivision (b), which as discussed requires the Department to ask, as part of its initial duty of inquiry, extended family members (including the biological grandparents) whether the child is or may be an Indian child. (See § 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(1).) Nothing in section 224.2, subdivision (b), relieves the Department of its broad duty to seek that information from "all relevant" individuals (*In re S.R.*, *supra*, 64 Cal.App.5th at p. 314) simply because a parent states on the

14

ICWA-020 form, as Clairessa stated here, "I have no Indian ancestry as far as I know." Such a rule ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe. (See, e.g., *ibid.* ["the children's parents apparently had no idea of their family's connection to the . . . tribe . . ., even though the children's great-grandmother was a member"]; *In re T.G.*, *supra*, 58 Cal.App.5th at p. 295 ["the information available at the outset of dependency proceedings will often be inadequate to ensure the necessary protection of the rights and cultural heritage of Indian children, Indian families and Indian tribes"]; *In re Breanna S.* (2017) 8 Cal.App.5th 636, 650 ["'parents may be unsure or unknowledgeable of their own status as a member of a tribe'"], disapproved on another ground in *In re Caden C.* (2021) 11 Cal.5th 614, 637, fn. 6; *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 254 ["a child may qualify as an Indian child within the meaning of the ICWA even if neither of the child's parents is enrolled in the tribe"].)

Moreover, the holding of *In re Austin J.* is at odds with the Department's "continuing duty" (§ 224.2, subd. (a)) to determine whether a child is or may be an Indian child. That Clairessa disclaimed any Indian ancestry at the outset of the dependency proceedings did not end the Department's duty of inquiry, especially where relevant contact and identifying information was readily available. (See *In re Isaiah W.*, *supra*, 1 Cal.5th at p. 15 [although the juvenile court found ICWA inapplicable at the disposition hearing, "the court had an affirmative and continuing duty to determine ICWA's applicability at the . . . hearing to terminate [the mother's] parental rights"]; *In re Elizabeth M.*

15

(2018) 19 Cal.App.5th 768, 787 ["the agency must pursue all reasonable investigative leads"].)

The Department asserts this case is "akin to" *In re J.S.*, *supra*, 62 Cal.App.5th 678. It is not. In *In re J.S.* this court held the Department conducted an adequate inquiry into the father's possible Indian ancestry by interviewing the paternal grandmother, who the father indicated may be "Native American." (*Id.* at p. 683.) The paternal grandmother stated she did not know of any tribe associated with her family, "had no other information," and did not identify any other paternal relatives. (*Id.* at p. 690.) The investigative trail ended with the paternal grandmother. In contrast, Maxcine blazed a new trail of ICWA information: She had access to knowledge about Clairessa's biological family the Department could have obtained with a phone call or email. (Cf. *In re A.M.*, *supra*, 47 Cal.App.5th at p. 323 [mother "has not demonstrated there was a viable lead that would require [the child protective agency] 'to make a meaningful effort to locate and interview extended family members'"]; *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1054 ["limited information" provided by the aunt "was too attenuated for the [a]gency to do anything further"]; *In re C.Y.* (2012) 208 Cal.App.4th 34, 41-42 [juvenile court conducted an adequate inquiry by asking the mother's adoptive father whether he knew the names of the mother's biological parents or had any information about her Indian ancestry, and the adoptive father said he did not and did not know of anyone who did].)

For its part, the juvenile court failed to ensure the Department adequately investigated the children's possible Indian ancestry through Clairessa's side of the family. At the August 8, 2019 jurisdiction and disposition hearing, the court

16

began to question the Department's failure to obtain information about Clairessa's biological parents, but ultimately accepted the Department's erroneous assertion that the last minute information report stated Maxcine did not have current contact information for Clairessa's biological parents, when in fact the report stated the opposite. Two months later, without any further updates from the Department on its efforts to locate Clairessa's biological parents, the court restated its earlier (erroneous) understanding that Maxcine did not know how to contact Clairessa's biological parents. ICWA and related California law require more. (See *In re N.G.*, *supra*, 27 Cal.App.5th at p. 482 ["The juvenile court . . . had a duty to ensure that [the child protective agency] made [the relevant] inquiries," including asking the maternal uncle whether the child "may have maternal Indian ancestry"]; *In re K.R.*, *supra*, 20 Cal.App.5th at p. 709 ["the court has a responsibility to ascertain that the agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so"].)

Citing *In re Rebecca R.* (2006) 143 Cal.App.4th 1426 and *In re A.C.*, *supra*, 65 Cal.App.5th 1060, the Department argues "any alleged error was harmless" because Deshawn and Clairessa "have made no representation that [Clairessa's] biological relative would provide any information indicating the children were Indian children." In *In re Rebecca R.* the father contended the child protective agency failed to carry out its duty of inquiry because the social worker never asked him whether his child may have had Indian ancestry. (*In re Rebecca R.*, at pp. 1428-1429.) The court held that, because the father never claimed "some Indian connection sufficient to invoke the ICWA," he "failed to

17

show a miscarriage of justice." (*Id*. at pp. 1430-1431.) The court stated: "The burden on an appealing parent to make an affirmative representation of Indian [ancestry] is de minimis," and "[i]n the absence of such a representation, there can be no prejudice and no miscarriage of justice requiring reversal." (*Id*. at p. 1431.) Following *In re Rebecca R.*, the court in *In re A.C.* similarly held that "a parent asserting failure to inquire must show—at a minimum—that, if asked, he or she would, in good faith, have claimed some kind of Indian ancestry." (*In re A.C.*, at p. 1069.)

A parent, however, does not need to assert he or she has Indian ancestry to show a child protective agency's failure to make an appropriate inquiry under ICWA and related law is prejudicial. The courts in *In re Rebecca R.*, *supra*, 143 Cal.App.4th 1426 and *In re A.C.*, *supra*, 65 Cal.App.5th 1060 missed (and the Department's argument misses) the point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child: to obtain information the parent may not have. It is unreasonable to require a parent to make an affirmative representation of Indian ancestry where the Department's failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim. (See *In re Michael V.* (2016) 3 Cal.App.5th 225, 233 ["the burden of coming forward with information to determine whether an Indian child may be involved and ICWA notice required in a dependency proceeding does not rest entirely—or even primarily—on the child and his or her family"].) The Department's failure to conduct an adequate inquiry into Y.W. and Y.G.'s possible Indian ancestry makes it impossible for Deshawn and Clairessa to demonstrate prejudice.

(See *In re N.G.*, *supra*, 27 Cal.App.5th at p. 484 [ICWA error was prejudicial where the record did not show "the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements"]; see also *In re Mary G.* (2007) 151 Cal.App.4th 184, 212 ["*In re Rebecca R.* does not hold that on appeal a parent must produce evidence—as a prerequisite to reversal for ICWA notice deficiencies—that the child is a member of an Indian tribe or eligible for membership in a tribe. Indeed, a parent does not have to make that showing at the juvenile court to trigger the ICWA notice provisions. Rather, that is a determination the noticed tribes make."].)

### 3. *The Department Did Not Give Proper Notice to the Tribes*

The Department's failure to comply with ICWA did not end with its failure to conduct a proper inquiry into Clairessa's possible Indian ancestry. In addition, the notices the Department sent to the Cherokee tribes omitted essential background information about Deshawn's grandmother that federal regulations and related California law require. Federal regulations implementing ICWA provide that the notice must include, in addition to information about the child and the child's parents, "'[i]f known, the names, birthdates, birthplaces, and Tribal enrollment information of other direct lineal ancestors of the child, such as grandparents." (25 C.F.R. §§ 23.11(a), 23.111(d)(1)-(3); see *In re E.H.* (2018) 26 Cal.App.5th 1058, 1069; *In re Breanna S.*, *supra*, 8 Cal.App.5th at p. 651, fn. 8.) Section 224.3, subdivision (a)(5)(C), requires ICWA notices to include "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married, and former names or aliases, as well

19

as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (See *In re T.G.*, *supra*, 58 Cal.App.5th at p. 294.)

"ICWA notice requirements are strictly construed" (*In re J.M.* (2012) 206 Cal.App.4th 375, 380) and "'must include enough information for the tribe to "conduct a meaningful review of its records to determine the child's eligibility for membership."'" (*In re J.S.*, *supra*, 62 Cal.App.5th at p. 688; see *In re Breanna S.*, *supra*, 8 Cal.App.5th at p. 653 ["vigilance in ensuring strict compliance with federal ICWA notice requirements is necessary"]; *In re A.G.* (2012) 204 Cal.App.4th 1390, 1397 ["[b]ecause of their critical importance, ICWA's notice requirements are strictly construed"].) Here, in the first notice to the tribes, the Department omitted the birthplace of Deshawn's grandmother; in the second notice, the Department also omitted the date and place of her death. These omissions violated federal and state law. (See 25 C.F.R. §§ 23.11(a), 23.111(d)(1)-(3); § 224.3, subd. (a)(5)(C); *In re E.H.*, *supra*, 26 Cal.App.5th at p. 1069 ["'it is necessary to provide as much information as is known on the Indian child's *direct lineal ancestors*'"]; *In re Louis S.* (2004) 117 Cal.App.4th 622, 630 ["The burden is on the [a]gency to obtain all possible information about the minor's potential Indian background and provide that information to the relevant tribe or, if the tribe is unknown, to the [Bureau of Indian Affairs]."].)

The Department argues it did not have to include the birthplace of Deshawn's grandmother in the notices to the tribes because Deshawn only provided a "possible" place of her birth, and according to the Department, a possible place of birth is not a "known" fact that the Department must include on the notice. The Department, however, provides no authority for this

argument. Nothing in ICWA, the implementing federal regulations, or the related California statutes defines "known" as "certain." "Known," in the context of providing as much information as possible for the tribes to make a meaningful determination of a child's membership or eligibility for membership, should include all information in the possession of the Department. At a minimum, the Department admittedly failed to include in the second ICWA-030 notice (for the section 366.26 hearing)[11] the date and location of the death of Deshawn's grandmother, facts that were not only known, but arguably certain.

Finally, the Department argues its failure to include the birthplace of Deshawn's grandmother in the ICWA notice was harmless because "there is no reason to believe that this information would have produced a different result concerning the children's Native American heritage." "'[O]rdinarily failure in the juvenile court to secure compliance with [ICWA's] notice provisions is prejudicial error.' [Citations.] Any failure to comply with a higher state standard, however, 'must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error.'" (*In re Breanna S.*, *supra*, 8 Cal.App.5th at p. 653; accord, *In re E.H.*, *supra*, 26 Cal.App.5th at p. 1072.)

The Department's incomplete notices to the tribes violated both federal regulations and state law. (25 C.F.R. §§ 23.11(a), 23.111(d)(1)-(3); § 224.3, subd. (a)(5)(C); see *In re Breanna S.*, *supra*, 8 Cal.App.5th at pp. 651, 654 [where the notices to the

---

[11] "Notice shall be sent . . . for every hearing that may culminate in an order for . . . termination of parental rights . . . unless it is determined that [ICWA] does not apply to the case in accordance with Section 224.2." (§ 224.3, subd. (b).)

tribes omitted background information on the lineal ancestors, including their places of birth and death, "the Department violated the requirements of both federal and state law regarding the content of an ICWA notice"].)  The notices omitted not only the place of birth, but also the date and place of death of Deshawn's grandmother.  The Department's failure to provide this information was not harmless in light of Deshawn's claim of Indian ancestry through his grandmother.  (See *In re E.H.*, *supra*, 28 Cal.App.5th at p. 1074 [child protective agency's failure to provide the tribe with "complete and accurate notice of the personal identifying information about the 'direct lineal ancestors' of [the child] who may have had" Indian ancestry was prejudicial]; *In re Breanna S.*, at p. 655 ["once ICWA notice is required, . . . we would be extremely reluctant under most circumstances to foreclose the tribe's prerogative to evaluate a child's membership rights without it first being provided all available information mandated by ICWA"].)  We cannot say the Cherokee tribes would have made the same determination Y.W. and Y.G. were not Indian children had the Department fulfilled its obligations under ICWA and related California law and mailed notices with more complete information.  (See *In re E.H.*, at p. 1074; *In re Breanna S.* at p. 654; cf. *In re J.M.*, *supra*, 206 Cal.App.4th at p. 382 [omission of the name of a known great-great-grandparent from the ICWA notice "was necessarily harmless" because the "children are disqualified from membership irrespective of their great-great grandparents' possible membership in the tribe"].)

## DISPOSITION

The juvenile court's orders terminating the parental rights of Deshawn and Clairessa are conditionally affirmed. The juvenile court is directed to ensure the Department complies fully with the inquiry and notice provisions of ICWA and related California law, including obtaining from Maxcine the name of Clairessa's biological father and the contact information for Clairessa's maternal aunt, following up on any information the Department may obtain about Clairessa's possible Indian ancestry, and sending new ICWA-030 notices to the Cherokee tribes that include complete biographical information about Deshawn's grandmother.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.