Filed 1/11/22  In re N.M CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re N.M. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, | |
| Plaintiff and Respondent, | G060482 |
| v. | (Super. Ct. Nos. 20DP0006 & 20DP0007) |
| D.M., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Robert Gerard, Judge.  Affirmed.

Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel; Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*          \*          \*

## INTRODUCTION

D.M., father of N. and D. (Father), appeals from the juvenile court's order terminating his parental rights under Welfare and Institutions Code section 366.26. [1] His sole contention on appeal is that the juvenile court erred by failing to comply with its duty of inquiry imposed by state statutory provisions implementing the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) before finding ICWA did not apply. County Counsel concedes the juvenile court erred by failing to satisfy its inquiry duty, but argues the error is harmless.

It is undisputed the juvenile court never asked Father about Indian ancestry or heritage in violation of section 224.2, subdivision (c). But the record shows Father, through his counsel, stipulated that ICWA did not apply in this case. As the juvenile court's error was not prejudicial, we affirm.

## FACTS AND PROCEDURAL HISTORY[2]

### I. THE JUVENILE COURT ASSERTS JURISDICTION OVER THE CHILDREN.

In December 2019, then five-year-old N. and two-year-old D. (collectively the children) were taken into protective custody and placed with their maternal grandmother after their mother J.I. (Mother) gave birth to their half-brother J. and tested positive for THC, methamphetamine, and amphetamine; J. tested positive for THC. The following month, the Orange County Social Services Agency (SSA) filed a juvenile dependency petition (the petition) alleging the children came within the juvenile court's

---

[1]  All undesignated statutory references are to the Welfare and Institutions Code.

[2] Our summary of facts and procedural history is limited to provide relevant context for the resolution of the single issue presented in this appeal.

jurisdiction under section 300, subdivisions (b)(1) (failure to protect) and (g) (no provision for support).[3]

The petition alleged Mother had an unresolved problem with substance abuse involving methamphetamine, marijuana, and alcohol; she admitted she used methamphetamine twice while she was pregnant with J. and used marijuana throughout that pregnancy. The petition alleged Mother had a criminal history, which included convictions and/or arrests for several substance-abuse related offenses. Mother and Father have a history of domestic violence; in May 2016, an emergency protective order was issued protecting Mother from Father. Mother did not have a safe and stable home in which she could provide appropriate care for the children.

The petition further alleged Father had a criminal history which includes convictions and/or arrests for second degree robbery and participating in a criminal street gang. At the time the petition was filed, Father was incarcerated and unavailable to provide appropriate care for the children.

At the jurisdiction and disposition hearing in July 2020, Mother and J.'s father submitted on the allegations of the petition. Father did not appear at the hearing and his whereabouts were unknown at that time. SSA mailed Father a letter informing him of the court proceedings and sent him an incarcerated parent packet.[4] SSA had not heard from Father as of the time of the jurisdiction hearing. The juvenile court granted Father's appointed counsel's request to be relieved.

The juvenile court found the petition's allegations true by a preponderance of the evidence and declared the children dependent children of the Orange County

---

[3] The petition was filed on behalf of J. as well as the children. Neither J. nor his father is a party to this appeal; our references to them are limited to provide relevant background.

[4] An SSA addendum report stated that on January 11, 2019, Father had been sentenced to a 10-year prison term.

Juvenile Court under section 360, subdivision (d).  The court also ordered SSA to continue to search for Father.

## II.

### SSA Makes Written Inquiry About Father's Indian Heritage/Ancestry, the Parties' Counsel Stipulate that ICWA Is Inapplicable, and the Court Accepts the Stipulation.

SSA apparently located Father and in late July 2020 sent Father a letter stating in part:  "Currently, you are assumed to be the alleged father of the children, N[.] and D[.]. If you choose to establish paternity, please complete the attached JV[-]505 forms, one for each child. [¶] To the best of you knowledge, do you have any American Indian heritage/ancestry?  If so, what tribe?"

The JV-505 forms themselves do not address American Indian heritage or ancestry.  Father completed the JV-505 forms and returned them to the social worker. Father's submission to the social worker did not include an answer to the question in SSA's July 2020 letter about whether he was aware of having Indian heritage or ancestry.

The record does not show SSA ever followed up with Father regarding its inquiry about whether he had any Indian heritage or ancestry; it does not show SSA ever provided him with a Judicial Council ICWA-020 inquiry form (form ICWA-020). Instead, SSA's interim report dated August 31, 2020 stated, "[t]he Orange County Juvenile Court is respectfully requested to make ICWA findings." At a progress review hearing that same day, the court found Father to be the children's presumed father. The court denied Father reunification services under section 361.5, subdivision (e)(1) by clear and convincing evidence.

In its six-month status review hearing report dated December 18, 2020, SSA reiterated its request: "The court is respectfully requested to make ICWA findings." In December 2020, a six-month review hearing was conducted by written stipulation

4

from the parties' counsel who waived appearances. In that document, counsel, including Father's counsel who is identified in the stipulation as from Juvenile Defenders, stipulated that the court should find, by a preponderance of the evidence, that ICWA does not apply. The juvenile court accepted the parties' stipulation and found that ICWA did not apply.

## III.

### THE JUVENILE COURT TERMINATES FATHER'S AND MOTHER'S PARENTAL RIGHTS.

Father first appeared at the contested six-month status review hearing and the contested 12-month status review hearing in February 2021, but ICWA was not discussed, and no inquiries were made. The juvenile court terminated Mother's reunification services. The court reiterated that reunification services to Father had been bypassed by prior court order. The court set the matter for a permanency hearing.

Following the permanency hearing, the juvenile court ordered the termination of Father's and Mother's parental rights to the children. Father appealed.

## DISCUSSION

## I.

### STANDARD OF REVIEW

We review the juvenile court's finding that ICWA does not apply to these dependency proceedings for substantial evidence. (*In re S.R.* (2021) 64 Cal.App.5th 303, 312.) "In the absence of an appellate record affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply. Instead, as a general rule, we will find the appellant's claims of ICWA error prejudicial and reversible." (*In re N.G.* (2018) 27 Cal.App.5th 474, 484.)

5

## II.

### ICWA DUTIES OF INQUIRY AND NOTICE

"ICWA reflects 'a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court . . . must follow before removing an Indian child from his or her family.' [Citations.] Both ICWA and the Welfare and Institutions Code define an 'Indian child' as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'" (*In re D.F.* (2020) 55 Cal.App.5th 558, 565, fn. omitted (*D.F.*).)

The duties imposed by ICWA on the juvenile court and the county welfare department can be separated into three phases: (1) a duty to inquire, (2) a duty of further inquiry, and (3) a duty to provide ICWA notice. (*D.F., supra*, 55 Cal.App.5th at pp. 566-567.) If, after fulfilling the duty of inquiry and the duty of further inquiry, the court or the county welfare agency "knows or has reason to know . . . that an Indian child is involved" in the dependency proceedings, then notice pursuant to ICWA must be given. (§ 224.3, subd. (a).)

As to the duty of inquiry, the court and the county welfare department (here, SSA) have an "affirmative and continuing duty to inquire" whether a child who is the subject of a dependency petition is or "may be" an Indian child. (§ 224.2, subd. (a).) The duty to inquire begins with the "initial contact" and, at that stage, includes "asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (*Ibid.*) When the child is placed in temporary custody, the county welfare department has a duty to inquire whether the child may be an Indian child. (*Id.*, subd. (b).)

"Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the

6

child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) The juvenile court has a duty at the first appearance of each parent to ask whether he or she "knows or has reason to know that the child is an Indian child." (*Id.*, subd. (c); see Cal. Rules of Court, rule 5.481(a)(2)(A) ["At the first appearance by a parent . . . the court must . . . [a]sk each participant present whether the participant knows or has reason to know the child is an Indian child"].) At the time of a parent's first appearance in a dependency case, the court must also order the parent to complete "Parental Notification of Indian Status," form ICWA-020. (Cal. Rules of Court, rule 5.481(a)(2)(C).) The court must instruct the parties to thereafter inform the court if any of them later receives "information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

## III.
### ALTHOUGH THE JUVENILE COURT'S FAILURE TO MAKE ICWA INQUIRIES OF FATHER CONSTITUTED ERROR, SUCH ERROR IS HARMLESS BECAUSE FATHER STIPULATED THAT ICWA IS INAPPLICABLE.

As conceded by County Counsel in the respondent's brief, the record establishes the juvenile court erred by failing to ask Father at his first court appearance, or at any other time, whether he knew or had reason to know that either of the children is an Indian child and further erred by failing to order Father to complete form ICWA-020. County Counsel argues reversal is unwarranted, however, because Father failed to show prejudice from the juvenile court's lack of inquiry.

In *In re N.E.* (2008) 160 Cal.App.4th 766, 769 (*N.E.*), the juvenile court failed to order the father to complete a parental notification of Indian status form and SSA did not question him about possible Indian heritage. A panel of this court held that the juvenile court's and SSA's error, however, was harmless because the record showed the mother had informed SSA that the father had no Indian heritage, and the father

7

himself had stipulated ICWA did not apply to the case. (*Ibid.*) On appeal, the father argued the order terminating his parental rights must be reversed because SSA and the juvenile court failed to comply with their duties to inquire about Indian ancestry. (*Ibid.*) He did not assert on appeal that "he in fact has any Indian heritage." (*Ibid.*)

The appellate court affirmed the juvenile court's order, stating: "Even if the juvenile court and SSA failed in their inquiry responsibilities, we cannot disturb the juvenile court's order without a showing [the father] was prejudiced by the claimed error. [Citation.] And in this case, where there is absolutely no suggestion by [the father] that he in fact has any Indian heritage, he has failed to demonstrate the requisite prejudice." (*N.E., supra*, 160 Cal.App.4th at p. 769.)

Here, as in *N.E.*, Father, through his counsel, had stipulated that the juvenile court should find ICWA did not apply. There is no inconsistency in the record on that point. Although Father acknowledges in his opening brief that the six-month status review hearing was conducted by the written stipulation of counsel (including his own), he does not mention that that stipulation included a request that the juvenile court find ICWA inapplicable to the children. Father does not challenge the substance or effect of that stipulation on appeal. Father's stipulation is sufficient to support the juvenile court's finding that ICWA did not apply.

8

## DISPOSITION

The juvenile court's order terminating D.M.'s parental rights to the children is affirmed.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.