Filed 2/9/22  In re P.F. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re P.F., a Person Coming Under the Juvenile Court Law. | B312294 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 19CCJP05716A |
| Plaintiff and Respondent, | |
| v. | |
| B.F., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Commissioner.  Conditionally reversed and remanded with directions.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

_____

The mother appeals an order terminating parental rights over her daughter, P.F.  The Los Angeles County Department of Children and Family Services did not comply with its initial duty of inquiry under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (the Act).  State law requires the Department initially to ask extended family members whether a child is or may be an Indian child.  (Welf. & Inst. Code, § 224.2, subd. (b).)  The Department spoke to several maternal relatives but failed to make this initial inquiry.  We conditionally reverse the termination order and remand with directions to comply with the Act.

Statutory citations are to the Welfare and Institutions Code.

I

On September 4, 2019, the Department filed a petition under section 300, subdivision (b)(1).  Most of the allegations involved substance abuse:  when P.F. was born, she tested positive for opiates; the mother abused opiates and methamphetamine; and the father abused methamphetamine, had a criminal history involving drug possession and driving under the influence of alcohol, and had mental health issues.

On September 1, 2019, the mother said her family did not have Indian ancestry.

The father filed a Parental Notification of Indian Status form indicating he had no known Indian ancestry.

The Department interviewed the maternal grandmother on September 26, 2019, and October 17, 2019, but did not ask about the Act. The maternal grandmother lived with her adult daughter, Brielle (P.F.'s maternal aunt), and her own mother (P.F.'s maternal great-grandmother).

On October 30, 2019, the mother filed a Parental Notification of Indian Status form and checked the box, "I may have Indian ancestry." She wrote, "I don't know the tribe." The same day, the court said the mother "indicates she doesn't know a tribe or family member that would know" and ordered the Department to interview the mother and determine whether the Act applied.

On November 7, 2019, the maternal grandmother accompanied the mother to a meeting with the Department. The mother was verbally aggressive and would not engage, so the Department investigator met with and discussed case issues with the maternal grandmother. There is no evidence the investigator asked the mother or the maternal grandmother about the Act.

On January 3, 2020, the court held an adjudication and disposition hearing. It sustained allegations involving the parents' substance abuse and P.F. testing positive for opiates at birth. The court removed P.F. from parental custody and ordered the Department to provide reunification services. The record on appeal does not include a transcript of this hearing. The court's orders are silent about the Act.

The mother and Department social workers spoke many times. Their communications included phone calls in 2020 on February 4, June 9, June 26, July 30, August 7, August 11, August 21, September 15, and December 23, and meetings on June 10, July 21, and August 6. The mother emailed the

Department on January 17, 2021. Records of these communications show no sign the Department asked the mother about her potential Indian ancestry.

On June 19, 2020, the Department spoke with maternal aunt Brielle about placement of P.F. On August 27 and September 1, 2020, it communicated with maternal relative Brooke about placement of P.F. (Brooke's and the mother's grandfathers are brothers. She is the mother's second cousin.) Brielle and Brooke cooperated with the Department. Brooke told the Department she wanted to maintain contact with P.F. The Department did not ask either maternal relative about the Act.

The Department's status review report filed August 12, 2020, said, without explanation, "The Indian Child Welfare Act does not apply."

On October 29, 2020, the court found the mother failed to comply with her case plan and the court terminated reunification services.

Beginning on February 5, 2021, for the first time, the Department sought information from the maternal grandmother about Indian ancestry. Over a period of two months, it called her seven times, left four voicemails, and texted her. The grandmother did not respond.

The Department filed a report February 10, 2021, that said the mother "has maintained limited contact with the Department and has not been engaged further regarding" the Act.

On March 2, 2021, the Department mailed a notice to the Bureau of Indian Affairs and the Secretary of the Interior. Much of the notice was incomplete, including the maternal grandmother's birth date and place and all information about the maternal grandfather and great-grandparents. The "Other

4

relative information" section excluded maternal aunt Brielle and listed Brooke without a birth date or place.

The Bureau of Indian Affairs responded that the Department's notice contained insufficient information to determine tribal affiliation.

On April 29, 2021, the court held a permanency planning hearing. The Department asked the court to find the Act did not apply. The Department asserted it had had "limited to no contact with mother," and it had unsuccessfully tried to contact the maternal grandmother, "So as a result, there is no additional information on the specific tribe." The Department also cited the Bureau of Indian Affairs' response that there was insufficient information.

The court found there was no reason to believe the Act applied.

The court terminated parental rights.

## II

Substantial evidence does not support the court's finding of no reason to believe the Act applied because the Department failed to inquire about P.F.'s Indian status.

We review findings under the Act for substantial evidence. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.) A finding that the Act does not apply cannot be supported by the absence of evidence if that absence results from inquiry that is not proper, adequate, or demonstrative of due diligence. (*Id.* at p. 408.)

The Department and the court have an affirmative and continuing duty to inquire whether children involved in proceedings may be Indian children. (§ 224.2, subd. (a).) This continuing duty has three phases: the initial duty to inquire, the

duty of further inquiry, and the duty to provide formal notice. (*In re Dominic F.* (2020) 55 Cal.App.5th 558, 566 (*Dominic*).)

The deficiency in this case is in phase one. The initial duty to inquire begins when a referring party reports abuse or neglect and the Department starts an investigation. (§ 224.2, subd. (a); *Dominic*, *supra*, 55 Cal.App.5th at p. 566.) This duty includes asking the child, parents, legal guardian, *extended family members*, and others who have an interest in the child whether the child is, or may be, an Indian child. (§ 224.2, subd. (b); *Dominic*, at p. 566.) At their first appearance, the court must ask parents whether they know or have reason to know a child is an Indian child and must require parents to complete Parental Notification of Indian Status forms. (§ 224.2, subd. (c); *Dominic*, at p. 566.)

Phase two, the duty of further inquiry, is triggered when the Department or the juvenile court has reason to believe an Indian child is involved in the proceedings. (§ 224.2, subd. (e).) Further inquiry involves interviewing parents and extended family members to gather required information, contacting the Bureau of Indian Affairs for assistance in identifying tribes in which the child may be a member, and contacting tribes and any other person that reasonably might be expected to have information about the child's membership or eligibility. (§ 224.2, subd. (e)(1)–(2); *Dominic*, *supra*, 55 Cal.App.5th at pp. 566–567.)

Because we find problems with the initial inquiry, we do not outline the phase three duty of formal notice.

The Department failed its duty of initial inquiry by not asking maternal relatives about the Act. The Department first spoke to the maternal grandmother on September 26, 2019, but waited 16 months to attempt to ask her. It never asked maternal

6

relatives Brielle and Brooke, despite speaking with them for other reasons. Not only was inquiry of Brielle part of the initial duty, but when the Department belatedly sought out the maternal grandmother, common sense would have dictated calling Brielle, who lived with the maternal grandmother as of late 2019. The maternal great-grandmother lived in the same home and the Department did not attempt to inquire of her, either.

While the mother was sometimes uncooperative, the Department spoke with her at least a dozen times after the court ordered it to interview her about the Act, but the Department failed to comply with this order. The question why the mother believed she had Indian ancestry remains unanswered.

The Department complains it lacked leads, but it did not ask any maternal relatives whether P.F. was an Indian child. The Department's appellate brief quotes the statute's requirement to ask "extended family members" (§ 224.2, subd. (b)), without explaining how this could exclude the maternal relatives here. The duty of initial inquiry is triggered regardless of leads.

The Department contends the paucity of information meant there was no *reason to believe* P.F. was an Indian child, but this misses the crucial step of initial inquiry of extended family members. The Department may be correct that a parent's statement that she may have Indian ancestry, absent a possible region, tribe, or relative, is insufficient to trigger the second phase of further inquiry. (Cf. *Dominic, supra*, 55 Cal.App.5th at pp. 563, 569 [parent's statement she may have ancestry in "unknown tribe name from New Mexico" sufficient to trigger

7

further inquiry].) We need not decide this issue because the initial inquiry was incomplete.

The deficient inquiry in this case warrants reversal. We reverse where the record demonstrates the Department has not only failed to discharge its duty of initial inquiry, but where there is evidence of readily obtainable information that would likely bear meaningfully on whether the child is an Indian child. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744; contra *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1431 [requiring offer of proof to demonstrate prejudice].) The mother has made no showing that the maternal relatives possess knowledge about P.F.'s possible Indian ancestry. Nevertheless, their answers are likely to bear meaningfully on the issue of P.F.'s Indian ancestry. (See *Benjamin*, at p. 745.) Additionally, to the extent the mother acts as a surrogate for a tribe, further inquiry is necessary to provide notice sufficient to allow the tribe to determine whether P.F. is an Indian child. (See *In re N.G.* (2018) 27 Cal.App.5th 474, 484.)

We conditionally reverse the termination order and remand the case for further inquiry under the Act. We instruct the Department to comply with its duty to inquire of Brooke and Brielle and, due to its initial delay in attempting to contact the maternal grandmother, to make a good faith attempt to contact the maternal grandmother and the maternal great-grandmother. If the Department communicates with Brielle, it shall seek contact information for the maternal grandmother and maternal great-grandmother, if necessary and appropriate. The Department must then comply with any resulting duty of further inquiry and duty to provide notice that this information may trigger.

8

Because we reverse on the ground of the initial inquiry, we need not and do not pursue the mother's contentions about deficient notice.  If the Department's initial inquiry develops a need for formal notice, the notice must include all previously known and newly discovered identifying information about P.F.'s maternal lineal ancestry.

## DISPOSITION

The order terminating the mother's parental rights of P.F. is conditionally reversed.  The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of Welfare and Institutions Code section 224.2 consistent with this opinion.  The juvenile court shall order that within 30 days of the remittitur, the Department perform its investigation of P.F.'s potential Indian ancestry.  If, after completing the initial inquiry, neither the Department nor the court has reason to believe or to know P.F. is an Indian child, the order terminating parental rights shall be reinstated.  If the court determines notice is required, it must proceed accordingly.

WILEY, J.

We concur:

GRIMES, Acting P. J.          HARUTUNIAN, J.*

---

*          Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9