Filed 2/19/25  In re M.S. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.S., a Person Coming Under the Juvenile Court Law. | B338561 (Los Angeles County Super. Ct. No. 19CCJP03054) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ANDRES S., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charles Q. Clay III, Judge.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Andres S. (father) appeals from an order terminating his parental rights to M.S. (born June 2018). Father's sole contention on appeal is that the Los Angeles County Department of Children and Family Services (DCFS) and the juvenile court failed to fulfill their duties of initial inquiry pursuant to the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California statutes by not interviewing certain paternal relatives. We find sufficient evidence supports the juvenile court's finding that the ICWA inquiry was adequate, therefore we affirm the judgment.

## COMBINED FACTUAL AND PROCEDURAL HISTORY

A petition was filed on behalf of the child in 2019 based on the parents' history of engaging in violent altercations, alcohol abuse, and histories of substance abuse. In May 2019, mother and father denied having any American Indian ancestry in their respective families. In March 2021, the court gave father full custody of the child with supervised visits for mother.

In May 2022, father called DCFS and stated he wanted to relinquish the child. The child's mother, Flor F. (mother) had been incarcerated and released; her whereabouts were unknown.[1] Father requested a social worker pick up M.S. when he was not

---

[1] Mother is not a party to this appeal.

2

available.  Father stated his mother's family had been helping care for M.S., but they returned the child to him.  This was father's explanation for not wanting the child in his care.

Father did not want M.S. to be placed with mother because he had "issues with her boyfriend."  Father explained M.S. had been with his mother's relatives from September to April, then went to his cousin.  Father indicated M.S. had "been through many of my families.  I don't want her to be going around. . . .  I want her to go to home [*sic*] where they gonna [*sic*] love her.  I don't want her."

Father reported he lived with paternal grandmother and provided her telephone number.  Paternal grandmother reported she raised father and all of her children.  She was upset about father's decision to have the child removed from his care by DCFS.  She was willing to take custody of the child, but only if her son left her house.

On June 22, 2022, father informed the social worker M.S. had no Indian heritage.

DCFS filed a petition on behalf of M.S. on June 24, 2022, pursuant to Welfare and Institutions Code section 300.[2] Attached to the petition was the ICWA-010(A) form, stating father was asked on June 22, 2022, about the child's Indian status and father gave the social worker no reason to believe the child is or may be an Indian child.

At the June 27, 2022 detention hearing, the juvenile court found father to be the presumed father of the child.  The court found it was not a case governed by ICWA, but ordered DCFS to

---

[2]	All future undesignated statutory references are to the Welfare and Institutions Code.

3

inquire of the child's extended family members as to any Indian heritage or tribal membership eligibility. The juvenile court detained M.S. from parental custody and set the matter for an adjudication hearing.

The social worker was able to reach mother by telephone, who informed the social worker the child had been staying with her nonrelative godparents. On July 27, 2022, the social worker inquired of mother regarding possible Indian ancestry. Mother denied having American Indian ancestry. Mother described herself as "a Latina." Her father and grandmother raised her in Honduras until the age of four. She then moved to the United States, where her father and stepmother continued to raise her.

Father identified himself as "American/Hispanic." He was born in East Los Angeles but raised in Azusa. He was raised by his grandmother, as his mother was constantly working. His mother provided for him. He knew who his father was but did not have a relationship with him. Father had four siblings including a sister who passed away. He was not close with his siblings. Father stated, "[G]rowing up he was disciplined the traditional 'Mexican' way." Father married mother in 2019 to prevent her deportation.

On August 1, 2022, father filed a "Parental Notification of Indian Status" (ICWA-020) form, indicating none of the categories listed under the heading "Indian Status" applied to him, the child, or their family.

At the August 1, 2022 arraignment hearing, the juvenile court inquired of father's counsel whether father claimed any Indian heritage. Father's counsel responded, "No, Your Honor, and I believe that it was found it did not apply in the prior case." The court found this is not a case governed by ICWA, but ordered

4

"[t]he Department remains under statutory obligation to inquire of the children's extended family members regarding any such heritage."

On August 2, 2022, father filed a "Waiver of Reunification Services" form, stating he did not wish to receive any services and did not wish to reunify.

On August 8, 2022, the juvenile court proceeded with an adjudication hearing. The court inquired of father "[w]hether there are any relatives of [M.S.] that can talk to the social worker about any Native American heritage that she might have." Father answered there were not. The court inquired, "Is there anyone in the family that you know of who has not been interviewed yet . . . because we have to make sure we ask everyone?" Father responded, "No, Your Honor." The court inquired whether father had given a list of relatives to the social worker, and father responded, "Yes, Your Honor." Father indicated the only family members he knew of were his mother and two of his brothers. The court then confirmed that father had no Indian heritage that he was aware of.

The court sustained the section 300 petition and declared M.S. a dependent of the court. M.S. was removed from parental custody. Father knowingly and intelligently waived his rights to reunification. Reunification services were ordered for mother.

On March 2, 2023, M.S. was removed from her godparents at their request and placed with Jasmin E. and James E.

On May 12, 2023, mother denied having American Indian heritage in a letter written to the social worker. On July 18, 2023, the maternal aunt Heidi B. stated she was not aware of any American Indian ancestry. On July 19, 2023, the social worker left a voicemail for the paternal grandmother inquiring about

5

American Indian heritage. On July 19, 2023, the social worker also left a voicemail for paternal uncle Victor S. asking about the family's potential American Indian ancestry.

On May 18, 2023, the maternal aunt reported mother was deported to Honduras.

In the August 11, 2023 status review report it was reported M.S. had been re-placed twice due to her behavior and was in the care of Elsie and Isabelle M. since June 28, 2023.

On August 25, 2023, family reunification services were terminated for mother and the matter was set for a section 366.26 hearing.

In a December 22, 2023 section 366.26 report, the social worker reported father had stated he had no American Indian ancestry in his family. Paternal grandmother also stated there was no American Indian ancestry in the family.

On March 8, 2024, father filed a section 388 petition requesting family reunification services. The juvenile court set the petition for hearing.

In the section 366.26 report filed April 5, 2024, DCFS reported father stated in two separate interviews, on February 1, 2024, and November 9, 2023, there is no American Indian ancestry in his family. On November 9, 2023, paternal grandmother reported there is no American Indian ancestry in the family. In May 2019, mother also denied American Indian ancestry in her family.

At the June 6, 2024 section 366.26 hearing, paternal grandmother and a paternal uncle were present. The juvenile court denied father's section 388 petition. The juvenile court ordered parental rights terminated and designated Elsie and Isabelle M. as M.S.'s prospective adoptive parents.

On June 11, 2024, father filed his notice of appeal.

**DISCUSSION**

## I. Applicable law and standard of review

"ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1129 (*Dezi*).) "The issue of whether ICWA applies in dependency proceedings turns on whether the minor is an Indian child." (*Ibid.*) "An 'Indian child' is defined as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'" (*Ibid.*) "At the commencement of a child custody proceeding, the court is obligated to inquire from each participant whether there is a 'reason to know' that the child is or may be an Indian child." (*Id.* at pp. 1129–1130, fn. omitted.) "The increased protections of ICWA apply 'where the court knows or has reason to know that an Indian child is involved.'" (*Id.* at p. 1130.)

Section 224.2 "codifies and expands on ICWA's duty of inquiry to determine whether a child is an Indian child." (*Dezi, supra*, 16 Cal.5th at p. 1131.) "Agencies and juvenile courts have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child is or may be an Indian child." (*Id.* at pp. 1131–1132.) "Section 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian,

7

extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" (*Id.* at p. 1132.) "When the agency has 'reason to believe' that an Indian child is involved, further inquiry regarding the possible Indian status of the child is required." (*Ibid.*) Only the initial duty of inquiry is at issue here.

The juvenile court's finding that ICWA does not apply implies that social workers and the court did not know or have a reason to know the child was an Indian child, and the social workers fulfilled their duty of inquiry. (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 401.) "The juvenile court's factual finding that ICWA does not apply is 'subject to reversal based on sufficiency of the evidence.'" (*Dezi, supra*, 16 Cal.5th at p. 1134.) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id.* at p. 1141.) "If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation . . . [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child." (*Ibid.*)

## II. The evidence supports the juvenile court's finding that ICWA does not apply

Father argues DCFS did not adequately inquire of M.S.'s extended family members regarding familial Indian heritage. While mother indicated she was from Honduras, father was born in the United States and often mentioned his family. Father

8

argues such relatives included an unnamed cousin, siblings, and paternal great-grandmother, who raised father. While father acknowledges the social worker left a voicemail for father's brother, he argues the record does not reflect the social worker ever inquired of relatives known to DCFS who would likely have had meaningful information to impart regarding the family's heritage. Thus, father argues, the juvenile court made its determination regarding the applicability of ICWA without having questioned many relatives. Father cites *In re Y.W.* (2021) 70 Cal.App.5th 542, 556, for the proposition that the social worker must ask "all relevant individuals whether a child is or may be an Indian child" in order to "obtain information the parent may not have."

Sufficient evidence supports the juvenile court's determination that DCFS fulfilled its duty of inquiry in this case. During the 2019 dependency case, DCFS asked father if he had any Indian ancestry, which he denied. Father's counsel informed the court that ICWA was found not to apply in the prior case, and there is no indication the finding was appealed. DCFS asked father on June 2, 2022, July 25, 2022, November 9, 2023, and February 1, 2024, whether he had any Indian ancestry. He responded that he did not. Father filed an ICWA-020 form in August 2022 stating he had no Indian heritage and confirmed the information in court shortly thereafter.

Paternal grandmother also denied Indian heritage. The paternal uncle, Victor S., did not return the social worker's telephone call. When the court inquired of father whether there was "anyone in the family that [he knew] of who has not been interviewed yet . . . because we have to make sure we ask everyone [about Native American ancestry]." Father responded,

9

"No, Your Honor." Father confirmed he had given DCFS the contact information for all relevant family members.

The Supreme Court recently confirmed in *Dezi* that an inquiry may be adequate and proper even if the agency "did not inquire of everyone who has an interest in the child." (*Dezi, supra*, 16 Cal.5th at p. 1141.) Section 224.2 "'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.'" (*Dezi.* at p. 1140.) "'The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.'" (*Ibid.*)

M.S.'s paternal great-grandmother, paternal siblings, and paternal cousin were not "reasonably available." (*Dezi, supra*, 16 Cal.5th at p. 1140.) Father reported that he was not close with his siblings and that one sister had passed away. He provided contact information for one brother, who did not respond to the social worker's inquiry. Father did not provide any contact information for the paternal great-grandmother or cousin. "Where . . . a parent largely fails . . . to provide names and contact information for extended family members, DCFS's ability to conduct an exhaustive ICWA inquiry necessarily is constrained." (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082.) "[W]e cannot ask [DCFS] to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided." (*Ibid.*)

The record shows DCFS and the juvenile court made a sufficient inquiry in this case. They inquired of every relative

that was reasonably available.  The juvenile court's factual determination that ICWA was inapplicable is amply supported.[3]

## DISPOSITION

The judgment is affirmed.

CHAVEZ, J.

We concur:

LUI, P. J.

ASHMANN-GERST, J.

---

[3]      *In re N.G.* (2018) 27 Cal.App.5th 474 is distinguishable. There, the court noted "the record does not show what, if any, efforts the agency made to discharge its duty of inquiry [citations], and the record also does not show that all required ICWA notices were given or that the ICWA notices that were given included all known identifying information . . . ." (*Id.* at p. 484.)  Under those circumstances, the *N.G.* court concluded, "In the absence of an appellate record affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply." (*Ibid.*)  The record before us is different, as it shows affirmative compliance with ICWA's notice requirements.

11