Filed 8/16/22 In re Kaylie R. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re KAYLIE R. et al., Persons Coming Under the Juvenile Court Law. | B314141 (Los Angeles County Super. Ct. No. CK87494C-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. RICARDO R., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge Pro Tempore. Affirmed.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

_____

Defendant and appellant Ricardo R. (father) appeals from the juvenile court's July 14, 2021, orders terminating his parental rights to Kaylie R. (Kaylie, born Sept. 2005) and H.R. (born Apr. 2011).[1]  Father's sole contention is that the court and the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).

Finding that the ICWA error was harmless, we affirm.

**BACKGROUND[2]**

*2011 Dependency Petition*

In April 2011, DCFS filed a Welfare and Institutions Code section 300[3] petition seeking the juvenile court's exercise of

---

[1]    We refer to Kaylie and H.R., collectively, as minors.

[2]    Because ICWA error is the only issue raised on appeal, this summary focuses on the procedural history and facts related to ICWA compliance.

[3]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

dependency jurisdiction over minors.[4] ICWA-010(A) forms were attached to the petition indicating that an "Indian child inquiry" had been made by questioning father and minors' mother, Gloria G. (mother),[5] and that minors had no known Indian ancestry. According to the detention report, father and mother had denied any Indian ancestry on April 14, 2011.

*Detention Hearing*

On April 26, 2011, father and mother each filed a Parental Notification of Indian Status (ICWA-020) form indicating that they had no known Indian ancestry. The same day, the juvenile court found father to be minors' presumed father, detained minors with their paternal grandmother, Teresa R. (paternal grandmother), and found that ICWA did not apply.[6]

---

[4]    Minors' older brothers—R.R. (born May 2001) and Christian R. (Christian, born Jan. 2003)—were also subjects of the dependency petition and some of the proceedings below. By the time father's parental rights to minors were terminated, however, R.R. and Christian were already adults. Accordingly, R.R. and Christian are not the subjects of or parties to this appeal, and we do not discuss them further.

[5]    Mother is not a party to this appeal.

[6]    On May 9, 2022, father filed a motion to augment the record on appeal and for permission to file a supplemental brief. We granted the motion. On June 15, 2022, an augmented reporter's transcript was filed, which included a transcript of a hearing held on the morning of April 26, 2011. As father observes in his supplemental brief, the transcript does not reflect that the juvenile court made any ICWA inquiries, findings, or orders at that hearing. A minute order dated April 27, 2011, however, states the following: "The court notes that today's findings on the minute order all took place yesterday 4-26-11.

3

*Supplemental Report*

DCFS reported that, when interviewed on May 31, 2011, mother again denied any Indian heritage.

*Adjudication*

At the adjudication hearing in August 2011, the juvenile court sustained the section 300 petition, declared minors dependents of the court, and placed minors with father under DCFS supervision.

*Detention and Supplemental Petition*

In March 2012, DCFS sought and obtained an order to detain minors from father. Minors were placed with paternal grandmother. A few days later, DCFS filed a section 387 supplemental petition. In August 2012, the juvenile court sustained the supplemental petition, removed minors from father, ordered reunification services for father, and terminated reunification services for mother.

---

The court further notes that the case was concluded in the morning, but the parent's [*sic*], children, and other family members all appeared in the afternoon after the case was concluded. The court recalled the case and proceeded with all appropriate findings. The judicial assistant was unable to make the appropriate findings in the minute order due to a clerical error as to the inability to recall the case. [¶] The 4-27-11 minute order reflects 4-26-11 findings." (Capitalization omitted.) The April 27, 2011, minute order further states: "Court finds I.C.W.A. . . . does not apply . . . . The court has no reason to know that the minor(s) are Indian children as defined by the Indian Child Welfare Act." Thus, we disagree with father that the court made no ICWA findings on April 26, 2011, "whatsoever." Rather, we assume that the ICWA findings were made at the afternoon hearing on April 26, 2011, for which no reporter's transcript appears in the record.

4

*Termination of Jurisdiction*

In February 2013, the juvenile court terminated reunification services for father. In June 2013, the juvenile court issued letters of guardianship appointing paternal grandmother minors' legal guardian. In August 2013, the juvenile court terminated its jurisdiction.

*2020 Supplemental Petition*

Paternal grandmother died in October 2020. On December 10, 2020, DCFS filed a section 387 supplemental petition on behalf of minors, indicating that the previous disposition was no longer effective as the children's legal guardian was deceased. DCFS recommended that minors be placed in the home of their paternal cousin, Jeannette R., with whom they had been detained on December 8, 2020. According to the ICWA-010 forms attached to the supplemental petition, a social worker questioned mother on December 1, 2020, and, based on that inquiry, the social worker had no reason to believe that minors were Indian children.[7]

*December 15, 2020, Hearing*

Mother and father appeared at a hearing on December 15, 2020, during which the juvenile court sustained the supplemental petition. The court asked mother's counsel if mother had "file[d] an ICWA notice[.]" Mother's counsel responded: "ICWA findings were made since we're at a 387 post legal guardianship. I just ask those findings remain." The court stated that the findings

---

[7] According to the detention report, mother denied Native American ancestry on December 1, 2020. The social worker was unable to obtain a statement from father.

would "remain." Soon after, the court stated, "We also had previous findings of ICWA as to father as well."[8]

*Section 366.26 Hearing*

At the section 366.26 hearing on July 14, 2021, the juvenile court terminated father's and mother's parental rights to minors and ordered adoption as minors' permanent plan.

*Appeal*

Father's timely appeal ensued.

**DISCUSSION**

I. *Relevant Law*

"ICWA was enacted to curtail 'the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement' [citation], and 'to promote the stability and security of Indian tribes and families by establishing . . . standards that a state court . . . must follow before removing an Indian child from his or her family' [citations]."[9] (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 780 (*Dezi C.*).)

Under California law enacted to implement ICWA, DCFS and the juvenile court have "three distinct duties . . . in dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).) The first is the initial duty of inquiry, which DCFS

---

[8]    In an addendum report filed on July 7, 2021, DCFS reported: "ICWA findings were made on [December 15, 2020,] and do not apply."

[9]    An "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition].)

"discharges . . . chiefly by 'asking' family members 'whether the child is, or may be, an Indian child.' ([§ 224.2], subd. (b).) This includes inquiring of not only the child's parents, but also others, including but not limited to, 'extended family members.' (*Ibid*.) For its part, the juvenile court is required, '[a]t the first appearance' in a dependency case, to 'ask each participant' 'present' 'whether the participant knows or has reason to know that the child is an Indian child.' (*Id.*, subd. (c).)" (*Dezi C., supra*, 79 Cal.App.5th at p. 780; see also Cal. Rules of Court, rule 5.481(a)(1)-(2).) The second duty—the duty of further inquiry—is triggered if there is "reason to believe that an Indian child is involved" (§ 224.2, subd. (e)), while the third duty—to notify the relevant tribes—is triggered if there is "reason to know . . . that an Indian child is involved" (§ 224.3, subd. (a)).[10]

A spate of appellate courts has recently weighed in on the consequence of a social services agency's failure to conduct the required initial ICWA inquiry, resulting in "a continuum of tests for prejudice stemming from error in following California statutes implementing ICWA." (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1011; see also *Dezi C., supra*, 79 Cal.App.5th at pp. 777–778.) Our Division has adopted the following rule: "[A]n agency's failure to conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding. For this purpose, the 'record' includes both the

---

[10] Here, father only challenges compliance with the initial duty of inquiry, so the duties of further inquiry and notice are not at issue.

record of proceedings in the juvenile court and any proffer the appealing parent makes on appeal." (*Dezi C.*, *supra*, at p. 779.)

II. *Standard of Review*

"On appeal, we review the juvenile court's ICWA findings for substantial evidence. [Citations.] But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. [Citation.]" (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

III. *Analysis*

Father contends that DCFS failed to interview minors' extended family members regarding possible Indian ancestry and that this error warrants the conditional reversal of the orders terminating his parental rights so that a proper initial inquiry can be conducted. Although we agree with father that DCFS's initial ICWA inquiry was deficient, we find that the error was harmless.

A. <u>The doctrine of invited error does not apply</u>

As an initial matter, we address DCFS's contention that father is estopped under the doctrine of invited error from challenging ICWA compliance on appeal because his counsel and mother's counsel below specifically asked the juvenile court at the December 15, 2020, hearing to maintain its prior findings that ICWA did not apply.

"'Under the doctrine of invited error, when a party by its own conduct induces the commission of error, it may not claim on appeal that the judgment should be reversed because of that error.' [Citations.]" (*In re G.P.* (2014) 227 Cal.App.4th 1180, 1193.) For the doctrine to apply, however, "it must be clear that counsel intentionally caused the trial court to err, and that counsel acted for tactical reasons and not out of ignorance or

8

mistake.  [Citation.]"  (*People v. Hampton* (2022) 74 Cal.App.5th 1092, 1103 (*Hampton*).)

We reject DCFS's claim of invited error.  The reporter's transcript from the hearing reflects that only *mother's* counsel made the request for prior ICWA findings to remain.  Even if we were to infer that father's counsel's failure to object indicates an acquiescence to mother's counsel's request, there is no indication in the record that father's counsel acted for tactical reasons such that the doctrine of invited error would apply.  (See *Hampton*, *supra*, 74 Cal.App.5th at p. 1103; see also *In re K.R.* (2018) 20 Cal.App.5th 701, 706 (*K.R.*) ["the parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal"].)

B. <u>The ICWA error was harmless</u>

As father correctly observes, DCFS had contact with numerous extended family members throughout the course of the dependency case, including (now-deceased) paternal grandmother, maternal grandmother, a maternal aunt, and maternal and paternal cousins.  The record is silent, however, as to any inquiries made of these extended family members regarding minors' possible Indian ancestry.  We interpret this silence to mean that DCFS did not actually conduct such inquiries.  (See *In re N.G.* (2018) 27 Cal.App.5th 474, 484; *K.R.*, *supra*, 20 Cal.App.5th at p. 709.)  DCFS thus failed to discharge its initial duty of inquiry.[11]  (See § 224.2, subd. (b) [requiring

---

[11]     While DCFS does not explicitly concede that ICWA error occurred, it does not contend that it fully complied with its initial duty of inquiry.

9

DCFS to question "'extended family members'" about possible Indian ancestry]; *Dezi C., supra,* 79 Cal.App.5th at pp. 776–777.)

Having found ICWA error, "our examination as to whether substantial evidence supports the juvenile court's ICWA finding . . . turn[s] on whether that error . . . was harmless—in other words, we must assess whether it is reasonably probable that the juvenile court would have made the same ICWA finding had the inquiry been done properly. [Citation.]" (*Dezi C., supra,* 79 Cal.App.5th at p. 777.)

Applying the "'reason to believe' rule" that we adopted in *Dezi C., supra,* 79 Cal.App.5th at page 779, we conclude that DCFS's failure to make the requisite inquiries of minors' extended family members was harmless because nothing in the record suggests a reason to believe that minors are Indian children within the meaning of ICWA. Father and mother both repeatedly reported that they had no known Indian ancestry, and nothing in the record suggests that either parent was adopted such that "their self-reporting of 'no heritage' may not be fully informed [citation]." (*Dezi C., supra,* at p. 779.) Father also makes no proffer on appeal that he or mother have any Indian heritage. (See *id.* at pp. 779, fn. 4, 786.)

Father cites several recent cases where ICWA error arising from the failure to question extended family members warranted remand. We find them distinguishable. The Courts of Appeal in *In re Y.W.* (2021) 70 Cal.App.5th 542 (*Y.W.*) and *In re H.V.* (2022) 75 Cal.App.5th 433 applied "the 'automatic reversal rule'" (*Dezi C., supra,* 79 Cal.App.5th at p. 777) to assess prejudice from a defective initial ICWA inquiry, while the Court of Appeal in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*) applied the "'the readily obtainable information rule'" (*Dezi C., supra,* at

p. 778). We explained our rejection of both rules in *Dezi C.*, *supra*, at pages 782–786. There are also factual differences. For example, the mother in *Y.W.*, *supra*, 70 Cal.App.5th at pages 548, 552–553 had been adopted as a young child, yet DCFS made no effort to follow up on viable leads to contact her biological parents to inquire about Indian ancestry. In *Benjamin M.*, *supra*, 70 Cal.App.5th at page 740, the mother denied Indian ancestry and the social services department was unable to locate or contact the father. Here, in contrast, both parents were contacted by DCFS and both denied Indian ancestry. Finally, in *In re Josiah T.* (2021) 71 Cal.App.5th 388, 397, the paternal grandmother represented that she had Cherokee Indian ancestry, yet DCFS failed to follow up on that information. Here, no family member reported Indian ancestry.

## DISPOSITION

The orders terminating parental rights are affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.
LUI

_____, J.
CHAVEZ

11