Filed 8/29/23  In re C.G. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re C.G. and S.G., Persons Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>S.G., Sr.,<br><br>　　Defendant and Appellant. | A167147<br><br>(Sonoma County Super. Ct. Nos. 6153-02-DEP, 6154-02-DEP) |

S.G., Sr. (Father), the father of S.G. and C.G., appeals from an order terminating his parental rights to both children.  His sole contention is that the Sonoma County Department of Health and Human Services (Department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA).)  The Department does not dispute its failure to document any effort to ask identified and available extended family members about the children's possible Native American ancestry, and therefore concedes error. We will conditionally reverse the court's order terminating parental rights and remand the matter for further proceedings as directed herein.

1

# I. BACKGROUND

In June 2020, the Department filed a petition under Welfare and Institutions Code section 300, subdivisions (a), (b)(1), and (c)[1] regarding then three-year-old S.G. and 17-month-old C.G.[2] The Department alleged that the children were at risk of serious physical and emotional harm as a result of their parents' conduct, and that there was a substantial risk they would suffer serious physical harm or illness as a result of their parents' failure or inability to adequately supervise or protect them.

The Department indicated there was reason to know the children might be "Indian children" because, upon the Department's inquiry, Father said he might have Seminole ancestry but was not enrolled in any tribe. The children's mother (Mother) said she did not have any known Native American ancestry.

In a June 2020 detention report, the Department wrote that Father reported "he is Seminole but is not enrolled with the tribe at this time. It is unclear whether or not ICWA applies. The Department will continue efforts to determine if ICWA applies." Mother also said she believed Father was affiliated with the Seminole Tribe in Florida but did not believe his family was registered. The Department listed three paternal adult siblings of the children, and stated the parents had identified "possible relatives for placement consideration." The Department stated it would "explore these

---

[1] Undesignated references are the Welfare and Institutions Code.

[2] Both parties cite to clerk's transcripts filed in a previous, related writ proceeding, case number A166060. Father contends augmentation to include these transcripts in the record is proper under California Rules of Court, rule 8.340. We construe the parties' actions as requests that we take judicial notice of these clerk's transcripts and hereby grant their requests under Evidence Code sections 452, subdivision (d) and 459.

2

and other relatives as more are identified." The court detained the children and reserved any rulings under ICWA.

Also in June 2020, the Department indicated it gave notice regarding each child to the Miccosukee Tribe of Florida, the Seminole Tribe of Florida, the Sacramento Area Director of the Bureau of Indian Affairs, and Mother and Father. The Department included information regarding the children's paternal grandmother and grandfather, as well as their paternal great-grandmother.

In a July 2020 jurisdiction/disposition report, the Department wrote that Father was supported by a sibling and identified the names and locations of four half-siblings of Father's, located in Washington State, Santa Rosa, California and Chicago, Illinois. The Department also reported that Father lived with one of his three adult children and maintained a relationship with his oldest adult child.

At the jurisdiction/disposition hearing, the juvenile court sustained certain allegations in the petition, placed the children in an out-of-home placement, and ordered reunification services.

In August 2020, the Department reported it had received responses from the two tribes contacted indicating that the children were not eligible for membership in their tribes.

In October 2020, the Department filed an interim review report in which it recommended that the juvenile court find that ICWA did not apply to the children's cases. The Department acknowledged that Father had stated he might have Seminole ancestry but was not an enrolled member in any tribe. It also indicated Father had received services from "Indian Health Services." The court found ICWA did not apply based on the Department's "proper" inquiries, the notices the Department sent to the tribes, and the responses received.

In subsequent status review reports, the Department asserted that ICWA did not apply based on the court's October 2020 finding, and that no further information had been provided to suggest that ICWA did apply. It also continued to indicate that Father was receiving services at Indian Health Services.

The court continued to order reunification services for both parents until the 18-month review, when it returned the children to Mother's care under a family maintenance plan.

In May 2022, the Department filed a supplemental petition under section 387. It alleged Mother had relapsed in her substance abuse and failed to follow through with her safety plan. Also, after the children were placed with Father in accordance with the safety plan, he allegedly admitted using methamphetamine in their presence and failed to drug test as required.

The Department included an Indian Child Inquiry Attachment form (ICWA-010(A)) with the section 387 petition. It indicated it had "not yet been able to complete inquiry about the child's Indian status because: ICWA was declared not to apply to this matter on 10/8/2020 and no further information has been brought forth to suggest that it may apply." It further indicated that its inquiry "gave [it] no reason to believe the child is or may be an Indian child." In its detention and supplemental petition reports, it indicated that the court had found ICWA did not apply and that no further information had been provided to suggest that it did.

In August 2022, the court found the allegations in the Department's section 387 petition to be true, declined to extend reunification services to the parents, and set the matter for a section 366.26 hearing. The court did not make any findings regarding whether ICWA applied to the children's cases. In its dispositional findings and orders, the court instructed the parties to inform the court if they received any information indicating the child was an

4

Indian child and again did not make any findings regarding ICWA's applicability to the children's cases.

In a subsequent section 366.26 report, the Department indicated that the court had found in October 2020 that ICWA did not apply to the case and the Department had not received new information to suggest that it did. The Department also reported that in October 2022, a Department social worker spoke to one of the children's paternal adult half-siblings, who indicated that she had no additional information regarding the children's possible Native American ancestry.

In January 2023, Father petitioned the court asking to resume reunification services for six more months. In an accompanying declaration, he stated he was working with a person from "my Tribe" who facilitated a domestic violence program called "Warriors for peace," in which Father was actively participating.

At a contested section 366.26 hearing, Father asserted that his bond with the children was so strong that it would be detrimental to the children to terminate his parental rights, apparently asserting the beneficial parental relationship exception applied. The court determined the exception did not apply and terminated his (and Mother's) parental rights. The court adopted the Department's recommended findings and orders. The court stated that the children were "not eligible" for ICWA.

Father filed a timely notice of appeal.

## II. DISCUSSION

### A. Legal Standards

"Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes. [Citation.] ICWA established minimum standards for state courts to follow before removing Indian

5

children from their families and placing them in foster care or adoptive homes." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*).)

California has adopted various procedural and substantive requirements of ICWA, including in sections 224.2 and 224.3, which impose distinct duties of inquiry, further inquiry, and notice. (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048–1052.) "First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*Id.* at p. 1052; see also Cal. Rules of Court, rule 5.481(a)(4).)

An inquiry should include "asking . . . extended family members . . . whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b); *In re G.H.* (2022) 84 Cal.App.5th 15, 29–30 ["The duty to inquire 'obligates the juvenile court and child protective services to ask all relevant involved individuals whether the child may be an Indian child.' "].) Extended family members include the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c).) The juvenile court must

6

find the Department engaged in a "proper and adequate further inquiry" and that the Department exercised "due diligence" before finding that ICWA does not apply. (§ 224.2, subd. (i)(2); *In re K.H.* (2022) 84 Cal.App.5th 566, 601.)

Thus, "ICWA and related state legislation collectively impose obligations on the juvenile court and child welfare agencies to cull information from the parents and extended family members about potential Indian ancestry. These are mandatory duties commensurate with the importance of ICWA's remedial goals." (*In re A.C.* (2022) 75 Cal.App.5th 1009, 1014.) Further, as was recently explained in *In re S.S.* (2023) 90 Cal.App.5th 694, relying on the parents alone for the initial inquiry does not necessarily protect the rights of the tribe. The court, quoting from a 2017 report by the California ICWA Compliance Task Force, wrote: " 'When parents are the sole target of the initial inquiry, it should be understood that there are a variety of reasons why relying on the parents does not necessarily protect the child's best interests, or the rights of the tribe. Parents may simply not have that information, or may possess only vague or ambiguous information. [¶] The parents or Indian custodian may be fearful to self-identify, and social workers are ill-equipped to overcome that by explaining the rights a parent or Indian custodian has under the law. Parents may even wish to avoid the tribe's participation or assumption of jurisdiction.' " (*In re S.S.*, supra, 90 Cal.App.5th at p. 700, italics omitted.)

We review a claim of inadequate inquiry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)

## B. Analysis

Here, there was reason to believe the children were "Indian children" based on Father's claim of Seminole ancestry at the beginning of the case in 2020. Adding to this reason to believe was Mother's understanding and Father's continual use of "Indian Health Services" as a service provider. In

7

other words, it was clear from the beginning that section 224.2 applied and that the Department had a mandatory duty to inquire about the children's possible Native American ancestry from all the extended family members whom it could contact.

There is not substantial evidence that the Department performed this mandatory duty. By July 2020, it had identified three adult paternal half-siblings of the children, as well as four half-siblings of Father's, who the Department indicated were located in Washington State, Santa Rosa, California and Chicago, Illinois. Rather than indicate that it attempted to ask them about the children's possible Native American ancestry, the Department reported only in June 2020 that it had given notice to two tribes with the limited information it had obtained, presumably from the parents; these tribes later responded that the children were not members.

In October 2020, the juvenile court, based on responses from the two tribes contacted by the Department with its limited information, found that ICWA did not apply to the children. The Department, rather than indicate it continued to make inquiries as was its duty, appears to have almost entirely relied on that finding for the remainder of the proceedings below (it later reported only that it had also made an inquiry to an aunt of the children).

The juvenile court erred in concluding that the Department had satisfied its inquiry obligation. Given that the record "does not show what, if any, efforts the agency made to discharge its duty of inquiry" with respect to extended relatives, we cannot conclude that substantial evidence supports the juvenile court's findings. (*In re N.G.* (2018) 27 Cal.App.5th 474, 484.)

The Department points out that our appellate courts differ regarding how to evaluate whether an ICWA inquiry error is prejudicial or harmless (see, e.g., *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 [parent "does not need to assert he or she has Indian ancestry to show a child protective agency's

8

failure to make an appropriate inquiry under ICWA and related law is prejudicial"], cf. *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069 ["a parent asserting failure to inquire must show—at a minimum—that, if asked, he or she, would, in good faith, have claimed some kind of Indian ancestry"]), and that the issue is currently before our Supreme Court (*In re Dezi C.* (2022) 79 Cal.App.5th 769, 777, review granted Sept. 21, 2022, S275578).

We conclude that here, where it is not disputed that Father asserted in good faith that he had Native American ancestry, it is appropriate to follow *In re Benjamin M.* (2021) 70 Cal.App.5th 735. That court held, "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child. This approach is consistent with the caselaw. In such cases, courts have generally avoided applying broad, rigid reversal rules and instead focused on whether the missing information was readily obtainable and whether such information would have shed meaningful light on the inquiry that the agency had the duty to make. (See *In re N.G.*[, *supra*,] 27 Cal.App.5th [at p.] 482 [reversal required where, among other things, agency never asked mother whether child may have maternal Indian ancestry and never asked her to complete a parental notification of Indian status form, despite being in contact with her] . . . . Under this approach, we require continued inquiry where the probability of obtaining meaningful information is reasonable in the context of ICWA." (*Id.* at p. 744.)

The parties agree that the appropriate remedy is to remand this matter to the trial court for a further review of the Department's ICWA inquiries, although the Department argues we should conditionally affirm and Father argues we should conditionally reverse. We will follow the course taken by

9

the court in *In re N.G.*, *supra*, 27 Cal.App.5th at p. 486, and conditionally reverse.

## III. DISPOSITION

The order terminating parental rights is conditionally reversed. On remand, the juvenile court shall order the Department to comply fully with the duty of initial inquiry (§ 224.2, subd. (b)) and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the pertinent tribes (25 U.S.C. § 1912(a); § 224.3). The Department's inquiry obligations shall include efforts to contact extended family members. (§§ 224.1, subd. (c), 224.2, subd. (b).) Once all of these obligations are discharged and the Department apprises the court of the results, the court shall reconsider the applicability of ICWA. If the court determines that ICWA does not apply, then the court shall reinstate the order terminating parental rights. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.