Filed 5/15/24  In re R.W. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.W., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E082493 |
| Plaintiff and Respondent, | (Super.Ct.No. J291108) |
| v. | OPINION |
| K.J. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant K.J.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant R.W.

1

Tom Bunton, County Counsel, Pamela J. Walls, Special Counsel for Plaintiff and Respondent.

Defendants and appellants R.W. (Father) and K.J. (Mother; collectively, Parents) appeal after the termination of their parental rights to R.R.W. (Minor; born Nov. 2014) at a Welfare and Institutions Code section 366.26[1] hearing. Parents contend on appeal that the juvenile court's ruling that the Indian Child Welfare Act of 1978 (ICWA) did not apply must be reversed for the failure of plaintiff and respondent San Bernardino County Children and Family Services (the Department) to adequately perform its duty of inquiry with paternal relatives under section 224.2, subdivision (b).

## FACTUAL AND PROCEDURAL HISTORY

A.    DETENTION

Minor, along with her siblings E.W. and G.W. (collectively, Siblings),[2] were detained from Parents on October 27, 2021. The family had been involved in a prior dependency proceeding between 2015 and 2017 based on domestic violence between Parents, substance abuse, and providing inadequate food and shelter to their children. The case was dismissed on May 12, 2017.

On October 27, 2021, it was reported that Father had been touching G.W., who was 13 years old, on her thigh and watched her in the shower. She also reported that Father would hit her and that he spanked all of the children. G.W. was suffering from

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Siblings are not subjects of the instant appeal.

2

panic attacks, depression, and anxiety. She also reported that Parents engaged in physical altercations in front of her, E.W., and Minor. Both Father and Mother smoked marijuana in the house in front of the children.

In addition, E.W., who was 12 years old, reported that Father had " 'put something in [h]is butt.' " E.W. suffered from cerebral palsy and was in a wheelchair. He had difficulty speaking. It was further reported that Father had touched Minor on the vagina after he promised to get her a cellular telephone if she let him touch her. Minor was interviewed and initially denied that Father touched her inappropriately. Minor had witnessed domestic violence between Parents, and had seen them both using "weed."

Law enforcement responded to the residence and Father was arrested. The home was dirty, the flooring was broken, and there was trash strewn about the house. Everyone in the family slept in one room. Mother believed the accusations against Father but stated that she did not "press the issue." Mother stated that Father had stabbed her in April 2021 during a domestic violence incident. Mother admitted to using marijuana and that Father used drugs. Father admitted to digitally penetrating G.W. one time when she was seven years old. He also admitted to touching Minor's vagina and buttocks over her clothes two times in the prior two months. He denied he had sexually abused E.W. Both Mother and Father had extensive criminal histories and numerous previous contacts with the Department.

According to the detention report, Mother denied she had any Indian ancestry on October 27, 2021. She provided a family find form and provided the names of two

3

maternal aunts R.F. and M.J., maternal relative T.E., and Minor's adult brother K.J. She also checked the box that she had no Indian ancestry.

The Department filed a section 300 petition for Minor against Parents on October 29, 2021 (Petition). It was alleged in the Petition under section 300, subdivision (a), serious physical harm, that Father had physically abused Minor by hitting her with his hands. It was further alleged pursuant to section 300, subdivision (b), failure to protect, that Minor had been exposed to domestic violence between Parents on numerous occasions; Mother failed to protect Minor from Father's physical abuse; Mother failed to protect Minor from sexual abuse committed by Father; and Parents had substance abuse problems. It was alleged pursuant to section 300, subdivision (c), that Minor suffered serious emotional damage in that she was sexually abused by Father, and Mother failed to protect her and obtain mental health treatment for Minor. Further, Minor suffered serious emotional damage due to her exposure to domestic violence between Parents. It was alleged pursuant to section 300, subdivision (d), sexual abuse, that Minor had been sexually abused by Father, and Mother had failed to protect Minor. Finally, it was alleged pursuant to section 300, subdivision (e) that Minor was left without provisions of support as Father was incarcerated and unable to arrange care for Minor.

A detention hearing was held on November 1, 2021. Father was not present; Mother was present in court. Father was in custody at the West Valley Detention Center. Mother was asked by the juvenile court if she had any Indian ancestry and she said no. A social worker from the Department advised the juvenile court that she reviewed the prior dependency files and there had been no previous claim of Indian heritage. The juvenile

4

court found a prima facie case that Minor came within section 300 and that detention should be outside the home.

## B. JURISDICTION/DISPOSITION REPORT AND HEARING

The jurisdiction/disposition report was filed on November 17, 2021. The Department requested a continuance so that medical exams and sexual abuse interviews could be conducted on Minor and Siblings. Parents had not provided ICWA information during the reporting period. The Department had not been able to contact Parents during the reporting period.

At a hearing on November 22, 2021, Father made his first appearance. Father denied that he had Indian heritage. He admitted to being the biological father of Minor. Father filed an ICWA-020 parental notification of Indian status form denying any Indian ancestry. Father also filed a family find form in which he listed R.W., Jr., who he stated was Minor's adult brother, and Mother. In addition, he listed an aunt, B.B., and her phone number.

On December 29, 2021, the Department filed an addendum to the jurisdiction/disposition report. It was recommended that the allegations in the Petition be found true. It recommended reunification services to Mother, but that Father should be denied services pursuant to section 361.5, subdivision (b)(6).[3] G.W. and Minor were placed together in a foster home and E.W. was in a separate placement. The Department noted that, in a prior proceeding involving the family in 2015, the juvenile court found

_____

[3] This section provides that reunification services need not be provided if there is severe sexual abuse of the child or sibling.

that ICWA did not apply. The Department was recommending that the juvenile court find that ICWA did not apply. The matter was continued several times.

Several addendum reports were filed with the juvenile court. Mother was participating in predisposition services and was visiting Minor and Siblings. Minor was interviewed and had a medical exam. Minor did not disclose any sexual abuse. She did state that Parents engaged in domestic violence and that Mother would hit Father. She also reported that Parents would hit her on her hands as discipline and Father hit her with a sandal on her buttocks. It hurt when she was hit. Mother had missed drug tests and had tested positive for opiates and marijuana on March 8, 2022. Mother had a warrant out for her arrest for a failure to appear in court.

In a final addendum report before the jurisdiction/disposition hearing, the Department changed its recommendation to granting no reunification services to Mother. The Department believed that Mother was aware that Father was sexually abusing Minor and G.W. Mother had not been doing well in her services and had missed drug tests or had tested positive.

The contested jurisdiction/disposition hearing was held on May 3, 2022. Father was present but was still in custody; Mother was not present. Parents presented no evidence. The juvenile court found the allegations in the Petition against Parents for Minor true, and denied reunification services to both Mother and Father. The juvenile court noted that both Mother and Father had denied any Indian heritage. The juvenile court ordered the Department "to make contact with any known relatives or to seek out relatives to continue with our ongoing inquiry. At this time there's no reason to believe

6

that ICWA applies." Father stated that he would want placement of Minor and Siblings with their adult brother, K.A.

C.      <u>REVIEW REPORTS AND HEARINGS</u>

In the section 366.3 review report, the Department recommended a permanent plan of adoption for Minor. The Department reported that no relatives had come forward during the reporting period. Further, Parents had provided no additional information regarding ICWA and no new relatives had come forward to whom the Department could make inquiries about Indian heritage. Father remained detained at the West Valley Detention Center. Mother had minimal contact with the Department. Minor was in the second grade and starting therapy. Minor had been moved to a new placement without G.W. The caregiver was interested in adopting Minor. The Department sought additional time for Minor to adjust to her new placement. The matter was continued for six months.

At the section 366.3 review hearing, Mother was present but Father was in custody and was not transported. The matter was continued for six months.

In the section 366.3 review report, the Department recommended that a section 366.26 hearing be set to establish a permanent plan of adoption for Minor. The Department reported that Mother gave the name of an "aunt in law," Z.J., for possible placement of Minor and G.W. The children did not want to move from their foster homes. Z.J. was asked about Indian ancestry and she denied there was any "official" tribe. No other relatives were identified during the reporting period. Father remained incarcerated at the West Valley Detention Center. The juvenile court set the section

7

366.26 hearing for August 28, 2023. The juvenile court also set a date for an ICWA notice review.

D.     FINAL ICWA INQUIRY

The Department submitted a report on its efforts to make ICWA inquiry. Mother had denied any Indian ancestry and agreed to provide the names of family members. Maternal aunt Z.J. denied any Indian ancestry. A social worker spoke with Mother on May 31, 2023, and Mother again agreed to provide phone numbers for relatives. She insisted her siblings M.J. and J.J. would deny any Indian ancestry as they shared the same parents. She agreed to contact Father about his Indian ancestry but he was adopted so it was not clear whether he would know if his biological family had any Indian heritage. She also agreed to contact Father's twin brother. A social worker texted Mother to find out where Father was incarcerated but the social worker did not received a response. There was no response from Mother regarding Father's twin brother.

The juvenile court held a hearing on ICWA on June 29, 2023. The Department contended that Mother had failed to provide any further information on relatives and it had been unable to reach Father. The juvenile court concluded that ICWA did not apply to the case.

E.     SECTION 366.26 REPORT AND HEARING

The section 366.26 report was filed on August 18, 2023. The Department recommended that parental rights for Parents be terminated and that a permanent plan of adoption be selected for Minor. In the report, the social worker reiterated the efforts regarding ICWA. Mother and mother's sister Z.J. denied Indian ancestry. In June 2023

8

maternal aunt M.J., adult brother K.J., maternal aunt R.F., and maternal relative T.E. all denied Indian ancestry. The Department made several attempts to contact B.B. and T.H. but each time the phone numbers were not in service. The section 366.26 hearing was scheduled for August 28, 2023. The matter was continued so that Father could be transported; he had been recently moved to Wasco State Prison.

The section 366.26 hearing was held on October 30, 2023. Both Mother and Father were present in court. Father did not testify but represented to the juvenile court that he objected to the termination of his parental rights. Counsel for Father relayed that Father had been adopted and still had questions about his biological family. It was detrimental to him not knowing his biological family. He did not want Minor to have the same problems. Mother also objected to termination of parental rights and argued a legal guardianship was appropriate. The juvenile court terminated the parental rights of Mother and Father and freed Minor for adoption.

## DISCUSSION

"ICWA provides: 'In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child, . . . shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.' [Citation.] ICWA also requires child welfare agencies to notify the [Bureau of Indian Affairs] of the proceedings, if the juvenile court knows or has reason to know the child may be an Indian child but the identity of the child's tribe cannot be determined." (*In re*

9

*N.G.* (2018) 27 Cal.App.5th 474, 479-480, fns. omitted..)  " 'ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child.' . . .  [¶] . . . [¶]  . . . 'ICWA provides that states may provide "a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under" ICWA.' " (*In re J.S.* (2021) 62 Cal.App.5th 678, 685.)

Under California law, the Department and the juvenile court have an " 'affirmative and continuing duty to inquire' whether a child in a dependency proceeding 'is or may be an Indian child.' " (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678.)  Section 224.2, subdivision (a), provides that, "The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child."  Section 224.2, subdivision (b) provides, "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian

custodian is domiciled." [4]   Section 224.2, subdivision (c) provides, "At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."

" ' "The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings." ' " (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552.)

Parents contend the juvenile court erred by finding that ICWA did not apply in this case.  They contend the Department failed in their initial duty of inquiry pursuant to section 224.2, subdivision (b).  Father insists the Department relied only on his representation that he had no Indian ancestry and failed in its duty to make further inquiries of him and paternal relatives.  He and Mother concede that adequate inquiry was made of maternal relatives.  Mother insists that Father was never interviewed about Indian ancestry in either his adoptive or biological family.  There was no inquiry made of Father as to relatives either by the Department or the juvenile court despite his appearing in court and being available to the Department.

---

[4] There is a conflict in the case law on the application of section 224.2, subdivision (b).  *In re Robert F.* (2023) 90 Cal.App.5th 492, review granted July 26, 2023, S279743, held the statute requires the Department's inquiry to include extended family members only when the child is taken into custody without a warrant.  Other cases disagree and find that such duty of inquiry applies in all case.  (See e.g. *In re Samantha F.* (2024) 99 Cal.App.5th 1062; *In re Delila D.* (2023) 93 Cal.App.5th 953, review granted September 27, 2023, S281447.)  Since in this case it does appear that Minor was taken into custody with a warrant, there is no need to address the issue.

11

Father appeared in court for the first time on November 22, 2021, at the jurisdiction/disposition hearing. He was asked by the juvenile court about Indian ancestry and denied any such heritage. On the same day, he filed both an ICWA-020 form denying ancestry, and a family find form listing an adult son identified as R.W. Jr., Mother, and a paternal aunt B.B., with a phone number. At another hearing, Father provided the first name and last initial of Minor's adult brother "K[.]A.," but provided no phone number.

The Department made efforts to reach these identified relatives before and after the juvenile court made a finding on ICWA. The Department reached out to Mother to have her contact Father's twin brother[5], who had apparently been identified as a paternal relative. She insisted she would try but never provided further information to the Department. In the section 366.26 report, which further outlined the attempts to contact paternal relatives, the Department provided that K.J., Minor's adult brother, denied Indian ancestry. Further, the Department made several attempts to contact paternal aunt B.B. and paternal cousin T.H., but each time their phone numbers were not in service. There is no indication in the record as to how the Department became aware of T.H. but it certainly can be inferred it was based on an inquiry with either Mother, Father, or other relatives. There also appeared to be another son, R.W., Jr., but there is no information as to his whereabouts during the proceedings. The Department did not have to inquire of a person for whom they had no contact information. Moreover, the other son, K.J., denied

---

[5] At one point in the record, Father's twin brother is referred to as "deceased."

Indian ancestry, in addition to Father denying Indian ancestry. The Department made numerous attempts to further inquire of paternal relatives even after the juvenile court determined that ICWA did not apply in this case.

The Department made a continuing effort in this case to contact all known paternal relatives. It made numerous attempts to contact B.B. and T.H. to determine if Minor had any Indian ancestry. It tried to get further information from Mother, but she provided no additional information. The juvenile court admonished the Department to continue its inquiry throughout the case and the Department complied. The Department made every effort to ask maternal relatives who were readily available about Minor's Indian ancestry. Moreover, the juvenile court previously made a determination that ICWA did not apply to this family. The Department made adequate ICWA inquiry and the juvenile court's finding that ICWA did not apply is supported by substantial evidence.

## DISPOSITION

The order terminating parental rights to Minor is affirmed in full.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:


FIELDS
J.


MENETREZ
J.

13